### CAIRNS and others vs. CHAUBERT and wife.

Where a testator devised the rents and profits of his real estate, and come of his personal property, to his widow for life ; and after the of his will acquired the right to the profits of a toll bridge for years; *Held*, that the widow was not entitled to the whole of of the toll bridge during her life, but only to the interest or value at the death of the testator.

A specific bequest of successive estates in terms for years, an attels real, gives to the respective owners the whole income of the ty during the continuance of their respective estates.

But where an estate for life, or an interest short of an absolute ownership is given in the general residue of the testator's personal property, terms for years and other perishable funds or property which may be consumed in the using, must be converted and invested in such a way as to produce a permanent capital ; the interest or income of which capital alone belongs to the owner of the particular estate in such general residue.

Where an executor, instead of calling in the money upon good and collectable bonds and mortgages or other securities belonging to the estate of the testator, for the benefit of the legatees, transfers such securities to a third person for the use of such legatees, with their assent, he is entitled to the same commissions as if he had actually received and paid over the money, or invested it as directed by the will.

But where an executor dies before he has converted the personal property of the testator into money, or otherwise disposed of it in the execution of his trust, he is not entitled to commissions upon the value such property.

THIS was an appeal from the sentence and decree of the surrogate of the city and county of New-York, upon the final settlement of the accounts of Mrs. Chaubert, as executrix of the will of her husband, G. Rapelje deceased. The testator died on the 5th of May, 1835, seized and possessed of a large personal estate. By his will, executed in 1832, he devised and bequeathed the rents of his real estate and the income of his personal property, after payment of his debts, to his widow for life; in lieu of dower in his real estate. After her death he gave a legacy of $7000 to the children of her brother B. P. Provost, together with his Irish estate; and a specific legacy of plate, books, and furniture. The residue of his property, after the death of his widow, he gave to Ann Eliza Taylor, now Mrs. Cairns, for life, charged with the support of her three children named in the will; with remainder to them and their issue in different proportions. Among the personal estate left by the testator was his interest, for about twenty-nine years, in a bridge which he had built across the East Chester creek, under the act of April, 1834, and some lease land adjoining the bridge on which the toll house was erected; which property was appraised at $10,000. About $4,500 of the personal estate was securely invested in bonds and mortgages; which, by an arragement with the appellants, had been transferred to the New-York Life Insurance and Trust Company, for the benefit of the legatees who were interested in the property under the will. The executrix had expended $592,34, in the completion of the toll house, and in building a barn upon the leasehold premises connected with the East Chester bridge, for the use of the keeper; which was allowed to her by the surrogate. He also allowed her $500 for the services of Gerardus Clark in the setlement of the estate; and the full commissions upon the whole personal estate of the testator, except the specific legacies, in the same manner as if she had actually

received the monies on the bonds and mortgages and re-invested the same for the purposes of the will or had paid the same over to the legatees. The appeal from the decision of the surrogate was in reference to the allowance of these three items in the account of the executrix.

*James Smith,* for the appellant.

*Cornelius Nagle,* for the respondents.

THE CHANCELLOR. The counsel for both parties in this case appear to have acted upon the supposition that Mrs. Chaubert was entitled to the whole income of the bridge property ; in the same manner as if the testator had made a specific bequest of the rents and tolls of this particular portion of his property to her for life, with remainder to others for the residue of the term for which the franchise of taking tolls was to continue ; unconnected with the general residuary bequest of all his property to her for life, after payment of debts, with remainders therein to others after her death. Upon that supposition it was clearly wrong to allow the executrix to expend upon this property, the capital of which was constantly decreasing by the efflux of time, other portions of the personal estate, in which the interests of the owners of the successive life estates therein and of the ultimate remaindermen in fee was entirely different. For, as the counsel of the appellant correctly remarks, if Mrs. Chaubert should continue to live until the charter of the bridge and the term for years in the toll house and barn lot expires, the appellant would lose the whole of the personal estate which had been laid out in improvements upon that property. And the result would be the same to the children of Mrs. Cairns, and their descendants, if their mother should survive the first tenant for life and outlive the continuance of this term of twenty-nine years.

Both parties are wrong, however, in supposing that the widow was entitled to the whole income of the bridge property in the situation in which it was at the time of the tes

tator's death ; instead of the interest or income of the capital which that part of his property would have produced by an actual sale thereof, and the investment of the proceeds of such sale in permanent securities. As the bridge was not in existence, nor in the contemplation of the testator, at the time of making his will, two years before the passage of the act of the legislature authorizing him to build it, upon no principle of construction can this be considered as a specific bequest of successive life estates, to his wife and to Mrs. Cairns, in this particular property.(a) The case, therefore, falls within the general principle that where an estate for life, or any other interest short of the absolute ownership, is given in the general residue of the testator's personal estate, terms for years, and other perishable funds or property which may be consumed in the using, are to be converted and invested in such a way as to produce a permanent capital ; the income or interest of which permanent capital alone is to go to the owner of the life estate, or other particular estate in the testator's residuary personal property. (*See How* v. *Earl of Portsmouth*, 7 *Vesey's Rep.* 137. *Feams* v. *Young*, 9 *Idem*, 549. *Covenhoven* v. *Shuler*, 2 *Paige's Rep.* 122. 2 *Will. Law of Ex'rs*, 859.) The expenditure in completing the toll house and barn may therefore be considered as properly expended upon this portion of the personal estate ; to carry into effect the intention of the testator. The bridge and franchise, including the improvements upon the toll house and barn and the leasehold property, should be valued together at what they were worth in cash immediately after the testator's death ; and the executrix should be allowed the interest on that amount, out of the tolls or income exclusive of taxes, for life, or until the property is actually sold. And the residue of the income must be accounted for by her, and added to the capital of the fund and accumulated ; so as to place those who are interested in the remainder in the same situation as if the bridge property and the expenditures

(a) See *Pickering* v. *Pickering*, 4 *Mylne & Craig's Chancery Reports*, 289.

thereon had been sold and converted into a permanent capital within the year after the death of the testator. This part of the decree of the surrogate must be modified accordingly, by restating that part of the account on these principles. And to prevent a confusion in the accounts between the owner of the second life estate and the remaindermen, in this part of the testator's personal estate, it may be proper for the surrogate to direct it to be sold and the proceeds to be invested in permanent securities.

The surrogate was right in allowing the executrix the $500 paid to Clark for his services in settling the estate; as it appears by the testimony to have been a proper disbursement, and such as was allowed by this court in the cases of *McWhorter* v. *Benson*, (*Hopk. Rep.* 28,) and *Vanderheyden* v. *Vanderheyden*, (2 *Paige's Rep.* 287.) That part of the decree must therefore be affirmed.

The decree was also right in allowing to the executrix commissions upon the bonds and mortgages which were valid and collectable; and which were assigned to the trust company, with the assent of the surrogate and the appellants, as permanent securities for the benefit of the remaindermen. This money was, in legal effect, received and paid over for the purposes of the trust. The executrix was not, however, entitled to commissions on the $10,000 at which the bridge property was inventoried, until it had been actually sold and the money invested for the purposes of the trust. For if she died leaving that property unsold, it would be necessary that a new personal representative of the testator should be appointed to perform that part of the trust, before the property could be converted into money and distributed to the legatees entitled thereto according to the directions of the will. The commissions, to that extent, must be disallowed.

As neither party has wholly succeeded upon this appeal, I shall not allow costs to either as against the other. And the proceedings are to be remitted to the surrogate to restate the account in conformity with this decision.