JOSEPHINE POMEROY et al., appellants,

*v.*

ALFRED MILLS, executor &c., respondent.

1. An appeal will lie to this court from an order of the prerogative court determining the amount of commissions allowed to executors, administrators, guardians and trustees under a will.

2. When an executor or administrator presents his accounts, purporting to charge himself with everything he has received and to credit himself with everything he has disbursed, and to show the balance on hand for distribution among the legatees or next of kin, and the court, after due notice to parties interested, makes decree approving and allowing such accounts, that is a final settlement within the meaning of the proviso in section 110 of the orphans court act, even though it appear that there is still outlying property of the decedent which may yet come into the accountant's possession for administration.

3. Stock belonging to the testator but held by his brokers to secure their advances on its purchase, and afterwards sold by them on the order of the executors, was placed in the executors' accounts, at its gross value, as a part of the aggregate upon which commissions were to be allowed. Other securities belonging to the testator, transferred by the executors to the legatees *in specie*, also entered into the account at their market value.—*Held*, that this method of determining the aggregate sum on which commissions were to be allowed was legal.

4. Commissions may be allowed upon any personal property, having a money value, that comes to the hands of the executor. Its reception gives the right to some compensation; how much, depends on other circumstances, which the statute submits to judicial discretion.

5. Stock belonging to the testator, which never came under the control of the executors, but was transferred by a foreign administrator *cum testamento annexo* directly to the legatees, cannot be used to increase the aggregate.

6. In determining the compensation of executors, administrators &c., the court should make allowance for only the pains, trouble and risk theretofore incurred, and not for the services which may be thereafter required.

7. The re-arrangement of statutes, in a general revision of the laws, does not usually change their signification.

Pomeroy v. Mills.

On appeal from a decree of the ordinary, whose opinion is reported in *Pomeroy* v. *Mills, 8 Stew. Eq. 442*.

*Mr. J. E. Ward* and *Mr. J. D. Bedle*, for appellants.

*Mr. H. C. Pitney* and *Mr. Barker Gummere* for respondent.

The opinion of the court was delivered by

Dixon, J.

This is an appeal from an order of the prerogative court, reducing the commissions of executors as allowed by the orphans court of Morris county. The appellants, residuary legatees under the will, complain that the allowance is still too large. The respondent, one of the executors, contends that the order of the prerogative court is not appealable. In *Anderson* v. *Berry, 2 McCart. 232,* it was decided that an appeal lies to the prerogative court from an order of the orphans court fixing the amount of executor's commissions, the decision resting upon the language of the constitution, that " all persons aggrieved by any order, sentence or decree of the orphans court may appeal from the same, or any part thereof, to the prerogative court." By a supplement to the prerogative court act, approved February 17th, 1869 (*Rev. p. 221*), the right of appeal from that court to this was conferred in identical terms upon " all persons aggrieved by any order or decree." This supplement, being constitutional (*Harris* v. *Vanderveer's Exr., 6 C. E. Gr. 424*), should receive the same interpretation as had before been given to its words in the constitution itself. The right of appeal must therefore be sustained.

In assailing the order of the court below, the appellants first insist that the Ordinary allowed larger commissions than are permitted by the statute regulating such matters. This statute is section 110 of the orphans court act (*Rev. p. 776*), to the effect that—

" On the settlement of the accounts of executors, administrators, guardians or trustees under a will, their commissions, over and above their actual expenses, shall not exceed the following rates : on all sums that come into their

hands, not exceeding one thousand dollars, seven per centum; if over one-thousand dollars and not exceeding five thousand dollars, four per centum on such excess; if over five thousand dollars and not exceeding ten thousand dollars, three per centum on such excess; and if over ten thousand dollars, two per centum on such excess; provided, that the commissions of executors and administraters in any estate where the receipts exceed the sum of fifty thousand dollars shall be determined by the orphans court on the final settlement of their accounts according to the actual services rendered, not exceeding five per centum on all sums which come into their hands."

The allowance to these executors being three per centum on $517,533.01, must find its warrant in the proviso just recited, and the appellants insist that the settlement of accounts upon which this allowance was made was not a final settlement within the meaning of that proviso. This claim is based upon the fact that there appears to be a power to sell lands vested in the executors and not yet executed, and also a suit pending in a foreign state on behalf of the testator, to the proceeds of which (if any) the executors will be entitled, and therefore further accounts will hereafter be required, and so the present cannot be called a *final* settlement.

The apparent reason for emphasizing this word "final," which is suggested by the collocation of the phrases "settlement of accounts" and "final settlement of accounts" in the same section, vanishes when we notice that this proviso was at first enacted as a separate law (*P. L. of 1867 p. 979*), and obtained its present place only in the Revision of 1874. Such change of position does not alter its significance. *State* v. *Kingsland, 3 Zab. 85; In re Thomas Murphy, 3 Zab. 180; Ruckman* v. *Ransom, 6 Vr. 565; Marts* v. *Cumberland Ins. Co., 15 Vr. 478*. The expression "final settlement of accounts" did not originate with this proviso, but occurs in section 108 of the orphans court act, which has existed ever since 1784. *Pat. 59 § 17; Elmer's Dig. 360 § 32*. In this section it is plainly applied to a settlement after which further moneys may come to hand for administration, and therefore it cannot be regarded as necessarily equivalent to "the settlement of final accounts." Its correct meaning is indicated in *Stevenson's Admr.* v. *Phillips's Exr., 1 Zab. 70*. When an executor or administrator presents his ac-

counts, purporting to charge himself with everything that he has received, and to credit himself with everything that he has disbursed, and to show the balance on hand for distribution among the legatees or next of kin, and the court, after due notice to parties interested, makes decree approving and allowing such accounts, that is a final settlement of the accounts, even though it appear that there is still outlying property of the decedent which may yet come into the accountant's possession for administration. As to the subject-matter on which it operates, the settlement is final. *State* v. *Hanford, 6 Hal. 71, 73; Black* v. *Whitall, 1 Stock. 572, 585.* Such is the character of the present account and decree, and the case comes within the proviso mentioned.

The appellants next insist that the commissions are excessive, because allowed on too large an aggregate and at too high a rate.

Included in the aggregate of the estate are five hundred shares of stock, which had been bought by the testator through a firm of brokers wherein his son, one of the executors, was a partner, and which were held by that firm to secure $38,795.71, advanced by it towards the purchase. The stock was sold, after the testator's death, by order of his executors, for $50,550, and this sum is placed in the account. The appellants claim that on only the amount actually realized by the estate, after the payment of the brokers' advances, about $11,000, should commissions be allowed. But we think otherwise. The stock really belonged to the testator, and the claim of the brokers was his personal indebtedness, and it became part of the executors' duty to determine how they would dispose of that property, and how they would pay that debt. The responsibility of due administration was cast upon them and they met it. If they did not take manual possession of the stock (and perhaps they did even that, since one of them was a member of the brokers' firm), they assumed actual control of it, making the brokers their mere agents. Through these agents they sold it, and the proceeds, coming into the hands of their agents, came, in law, into their own hands. This satisfies the statute.

Another large part of the estate consisted of securities which the executors received and inventoried at their market value,

and afterwards transferred to the legatees as so much cash. These are properly included in the aggregate. The statute was not designed to limit commissions to the mere money received. *Cairns* v. *Chaubert, 9 Paige 160.* So to interpret it would often constrain these officers to do what would be for the disadvantage of those whose interests were entrusted to them, to convert into cash what could easily be divided and might better be preserved *in specie,* or else abandon all right to compensation for service rendered and risk incurred. Such interpretation would also be opposed to the uniform practice of our probate courts. We think commissions may be allowed upon any personal property that comes to hand having a money value. Its reception gives the right to some compensation; how much, depends on other circumstances which the statute submits to judicial discretion.

A third item in the aggregate is the par value of three hundred and thirty shares of stock in the Third National Bank of St. Louis. This never came under the executors' control. It passed into the hands of an administrator *cum testamento annexo,* appointed in Missouri, and was by him transferred directly to the legatees. This item should be struck out.

The aggregate is thus reduced to $484,233.01. We think three per centum on this sum, $14,527, exceeds 'proper compensation. The statute requires the allowance to be made " according to the actual services rendered," and with reference to the actual pains, trouble and risk incurred in settling the estate, rather than in respect to the *quantum* of estate. In the present case the estate was almost entirely made up of securities readily salable in the New York market, which were either sold there by the firm of brokers already mentioned, at the usual commission, or transferred by the executors to the legatees *in specie.* The indebtedness of the testator was very slight, no litigation attended the administration, and the executors were prepared to settle their accounts in about a year after the probate of the will. Seldom could an estate of such magnitude be administered with so little " pains, trouble and risk " as were needed by this one. On the other hand, it is to be remembered that the provisions

of the will have been executed thus far with discretion, fidelity and promptitude, and these qualities form highly valuable elements in the services rendered.   One of the executors is a counselor of this state, and while he cannot be allowed counsel fees aside from commissions, yet the fact that his professional skill has made it unnecessary to invoke other legal assistance may justly be regarded.   Taking all things into consideration, we think two per centum on the aggregate of $484,233.01 will be a reasonable compensation to the executors.

It must be understood that this allowance covers only what has already been done, and the distribution of the balance which this account shows.   The statute does not permit us to compel the estate to pay in advance for what may yet be requisite to fully execute the will, and for obvious reasons, which the Ordinary sufficiently indicates in his opinion in this cause, such a course would be unjust.

The orders of the orphans court and the prerogative court will therefore be reversed, and the record remitted for the entry of a decree in accordance with this opinion.

*Decree unanimously reversed.*