This matter comes before me on an appeal of Corn Exchange National Bank and Trust Company, Philadelphia, and J. Maurice Wynn, co-trustees appointed by the will of John W. Sparks, deceased. A single issue is raised, the sufficiency of the allowances made by the Gloucester County Orphans Court to the trustees on their second accounting. The trustees contend that the court erred in law in limiting the base for allowances to the net increase in the assets of the estate; that allowances should have been made upon all moneys which came into the hands of the trustees during the period for which they were accounting.
The trust is perpetual and charitable, the sole beneficiary being Pennington Seminary of Methodist Episcopal Church, an educational institution located in this state. Under the administration of these trustees, fourteen quarterly payments have been made to Pennington Seminary during the period of three years and nine months covered by the accounting, a total of $130,954.01 or an average of $34,920.96 a year. *Page 301 
No exceptions were taken to the account, nor is there any suggestion that the trustees have not diligently and properly performed the duties and responsibilities of their office. In fact the president and the secretary of the cestui que trust
signed an approval of the account and requested that it be confirmed. They waived "the filing of a detailed income account, having previously been furnished with regular statements containing said information." The beneficiary does not contest the appeal.
The account and petition, as filed with the Orphans Court, covered thirty-three pages. The account was greatly reduced in length by the fact that only a summary of the fourteen income statements and reports made to the beneficiary were included; full copies of those reports were filed as vouchers; they contain from two to five pages each.
The balance in the trust estate as shown by the first account of the trustees was $975,366.42. When that account was presented and approved by the Orphans Court a commission of 3 1/2% was allowed on income and increase in corpus over the period of the accounting. When the present account was presented, the trustees asked for a similar allowance on income and corpus increase, that is, 3 1/2% on $41,360.90. No commissions had theretofore been allowed on the items making up this sum. The trustees also requested that they be allowed a commission of one-eighth of one per cent. on the gross amount that came into their hands and for which they were accounting, or one-eighth of one per cent. on $1,016,727.34.
The decree adjudged the account as reported to be correct. It further ordered: "Commission allowed accountant, 3 1/2% on net increase $25,037.39, $876.31; 1/8% on gross $1,000,403.81, $1,250.50." A memorandum filed by the court with the decree, in part, read: "The rule and practice seem to be that the Accountant is entitled to commissions on the gross estate as it appeared at the time of decedent's death and to all increases in the estate after deducting losses calculated to the date of the filing of the Account."
The reasoning of the court below, I am convinced, ran counter to the policy of the legislature as exemplified in title 3, chapter 11, section 2 of the Revised Statutes, and its conclusion *Page 302 
was not in accord with the rule declared by our Court of Errors and Appeals in Pomeroy v. Mills, 37 N.J. Eq. 578, and In reLinn, 124 N.J. Eq. 65; 199 Atl. Rep. 396. It is noteworthy that the legislature in amending the statute respecting allowances to fiduciaries (P.L. 1940 ch. 172 p. 530 § 1) declared that wherecorpus receipts do not exceed $50,000 commissions "shall" be computed according to the rates specified, and provided that executors, administrators, guardians and trustees under a will may take their commissions on income when the income is received by them "without allowance thereof by the court." Where corpus
receipts exceed $50,000 the statute provides that the court before which the account is presented for settlement and allowance shall determine the corpus commissions "according to the actual service rendered, and the commissions on corpus, shall not exceed five per centum (5%) on all corpus which comesinto their hands; * * *." (Italics mine.) The method adopted by the court below of allowing commissions on a percentage basis is, of course, suggested by the statute. The percentages selected by the court are, under the circumstances, logical and reasonable; the error occurred when the court refused to allow commissions on moneys, representing corpus, which came into the hands of the trustees but were, in part, lost because of falling market values. To deduct losses from profits and increases before computing commissions would be to deny commissions on corpus
which came into the hands of the fiduciary. In re Flynn
(Prerogative Court), 132 N.J. Eq. 85; 26 Atl. Rep. 2d794.
The leading New Jersey case in point is Pomeroy v. Mills,supra. There our Court of Errors and Appeals held that executors should have been allowed commissions on the total sum realized from the sale of estate securities, $50,550, notwithstanding the fact that such stock was held by a brokerage firm to secure $38,795.71, advanced by it when the stock was purchased. The court pointed out that the securities were the property of the testator, and the claim of the brokers was his personal indebtedness; that it became a part of the executors' duty to determine how they would dispose of the stock, and how they would pay the debt; that the responsibility of *Page 303 
due administration was cast upon the executors and they met it; that although the stock was sold through the brokers, the brokers were the agents of the executors and so the proceeds came into the hands of the executors. The court added: "The statute was not designed to limit commissions to the mere money received.Cairns v. Chaubert, 9 Paige 160. So to interpret it would often constrain these officers to do what would be for the disadvantage of those whose interests were entrusted to them, to convert into cash what could easily be divided and might better be preserved in specie, or else abandon all right to compensation for service rendered and risk incurred. Such interpretation would also be opposed to the uniform practice of our probate courts. We think commissions may be allowed upon any personal property that comes to hand having a money value. Its reception gives the right to some compensation; how much, depends on other circumstances which the statute submits to judicial discretion." In Stein v. Huesmann, 38 N.J. Eq. 405 (at p.408), Ordinary Runyon held that the executors were entitled to commissions "on the appraised value" of real estate which had come to their hands with a testamentary direction that they convert it into money. The executors had been requested by the beneficiary to convey the lands to him and the executors had consented so to do, subject to the allowance of commissions.
In re Linn, supra, was decided in May, 1938, before the amendment of R.S. 3:11-2, but it is dispositive of the question before me. In that case the executor complained because his commission had been calculated on a net liquidated corpus of $20,242.81, whereas he had received during the accounting period, in liquidation of assets, the sum of $56,525.20. Mr. Justice Heher, speaking for the court said: "The Orphans Court deducted from the amount thus received $6,682.39, representing the net loss on liquidation compared with the inventory value, and $29,600, the amount paid by the executor on bank loans to secure which assets so liquidated were posted. These deductions are plainly indefensible." Mr. Justice Heher added: "The laborer is worthy of his hire. Inadequate compensation makes for mismanagement." *Page 304 
The losses deducted by the court below in the present case were suffered when the trustees were persuaded that it was to the best interests of the estate to sell stocks and bonds at market prices. Some of these stocks and bonds were owned by the testator at the time of his death; some had been purchased by the trustees. The decedent, in his lifetime, was a member of a firm of brokers with offices in Philadelphia and New York. J. Maurice Wynn, one of the trustees, was and is a member of that firm. The offices of the firm are in the building of the other trustee, Corn Exchange National Bank and Trust Company. The evidence establishes the fact that in buying and selling stocks and bonds of the trust estate in recent troublous years the trustees have carefully studied and decided upon each and every transaction. Losses, totaling $16,323.53, were taken on twenty-four items but, at the same time, profits on fifty-nine transactions totaled $25,374.64. This represented a net gain for the trust estate on the eighty-three transactions of $9,051.11. It is this sum, added to $15,986.28 (representing additional assets) and $16,323.53 (the amount deducted by the court) which makes the total of $41,360.92 upon which allowances were requested.
"Where the same facts are before this court as were before the court below, with the same opportunity of judging of the `actual pains, trouble, and risk in settling the estate,' and in the judgment of the Ordinary the amount of commissions allowed is grossly inadequate, it is the duty of the Ordinary to substitute his own judgment, and exercise his own discretion upon the subject-matter." True, unless there is palpable, manifest error, the Ordinary ought not to interfere. But where, as here, an error is manifest, it should be reviewed and corrected by this court.Anderson v. Berry (Prerogative Court), 15 N.J. Eq. 232.
I shall advise a decree allowing the trustees a commission of 3 1/2% on the sum total of all corpus of the trust estate which came into the hands of the trustees during the period of their accounting and on which they have not heretofore had commissions, that is 3 1/2% on $41,360.92, and also a commission of one-eighth of one per cent. on the gross sum in the hands of the trustees and accounted for in this accounting, namely, on the sum of $1,016,727.34. *Page 305