IN THE MATTER OF THE ESTATE OF CHARLES E. BROWN, DECEASED.

*Orphans' Court, Sussex, Sept. 2, 1944.*

RICHARDS, J., sitting.

*Houston Wilson,* for Bessie Brown and another.

*Frederick P. Whitney,* for Daniel Short and others.

*James M. Tunnell, Jr.,* for Baltimore Trust Company, administrator *c. t. a.*

RICHARDS, Judge:

The general exceptions taken to the first and final account of Baltimore Trust Company, administrator *c. t. a.* of Charles Edward Brown aforesaid, apply to the whole account because they are based upon the contention that the account should not have been presented, examined, adjusted and settled as the final account of administration upon the estate of said decedent, for the reason that said administrator *c. t. a.* has not fully administered upon or accounted for all of the assets of the estate of said decedent with which it is chargeable, particularly certain assets which are mentioned in sub-paragraphs A, B, C and D of paragraph 15 of the petition filed by the exceptants, consisting of property and supplies owned and used by the decedent in connection with the operation of a certain holly wreath business in the State of Virginia; also certain sums of money due and owing to the said decedent by various persons, firms and corporations unknown to the exceptants as a result of the operation of said holly wreath business in the State of Virginia; also certain valuable jewelry which it is contended by the exceptants that the decedent had upon his person at the time of his death in the State of Virginia; also certain checks and accounts collectible not included in the inventory and appraisement filed by said Baltimore Trust Company, administrator as aforesaid, and not accounted for by it in said first and final account.

Before considering these general exceptions attention should be called to the fact that after letters of administration were granted to Baltimore Trust Company upon the estate of the decedent by the Register of Wills of Sussex County, Delaware, ancillary letters of administration were also granted to Charles E. Hughes by the Clerk of the Circuit Court of New Kent County, Virginia, for the purpose of administering upon the estate of the decedent located in the State of Virginia. Before said letters of administration were granted to Charles E. Hughes in the State of

Virginia a petition or paper writing was signed by these exceptants constituting all the heirs at law of the said Charles Edward Brown, deceased, setting forth that neither they nor Baltimore Trust Company, administrator *c. t. a.* as aforesaid, were in a position to administer and settle the estate of said decedent located within the State of Virginia and requesting that the said Charles E. Hughes be appointed ancillary administrator in the State of Virginia for that purpose. (Administrator's Exhibit No. 3).

This gives rise to the question of respective rights and duties of a domiciliary administrator and an ancillary administrator and the authority which each one has beyond the jurisdiction by which they were appointed.

The domiciliary representative of a decedent has title to all the personal estate regardless of where the same may be situated. Such a representative however has no authority to sue or enforce his rights outside of the jurisdiction of his appointment, and his title to the property of the decedent in other jurisdictions than that of his appointment is recognized only through comity. *Wilkins v. Ellet, Administrator,* 9 *Wall.* 740, 19 *L. Ed.* 586; *Johnson v. Powers,* 139 *U.S.* 156, 11 *S. Ct.* 525, 35 *L. Ed.* 112; *Terry, Administrator, v. Stull,* 19 *Del. Ch.* 412, 168 *A.* 251; *New York Trust Co. v. Riley,* 24 *Del. Ch.* 354, 16 *A. 2d* 772.

Where property of the decedent is located in another state than that of the domicile, it is often necessary to obtain ancillary letters of administration in that jurisdiction. When this course is taken the ancillary administrator has no authority outside of the jurisdiction of his appointment, but it is his duty to administer all the estate of the decedent found there and his right with respect thereto exceeds that of the domiciliary administrator. It is the duty of such ancillary administrator to apply the assets located in the jurisdiction of his appointment to the debts of persons resident there and distribute the balance, if any, to the persons entitled thereto as heirs of the decedent. This may be done

by paying the same to the domiciliary administrator or by paying it direct to the heirs and it may be determined by the order of the court from which he obtained his authority. *Deringer's Adm'r. v. Deringer's Adm'r.,* 5 *Houst.* 416, 1 *Am. St. Rep.* 150; *Bowles v. R. G. Dun-Bradstreet Corporation, et al.,* 25 *Del. Ch.* 32, 12 *A.* 2d 392; *Goodall v. Marshall,* 11 *N.H.* 88, 35 *Am. Dec.* 472; *Wedemann v. United States Trust Company,* 258 *N.Y.* 315, 179 *N.E.* 712, 79 *A. L. R.* 1320.

When a decedent leaves property in other states than that of his domicile, it is the duty of the domiciliary executor or administrator to make some investigation in every state where such property is known to be located, in order to determine what action, if any, should be taken for the protection of said property. The domiciliary administrator is not required to take ancillary administration upon the estate of the decedent in every jurisdiction or state where property is located, but said domiciliary administrator should determine whether the interest of the estate of the decedent would be best protected by also acting as ancillary administrator in the foreign jurisdiction or by allowing some-one else to serve in that capacity. This is true because the domiciliary administrator is generally looked upon as being more closely connected with the persons interested in the estate of the decedent than a foreign representative would be and consequently should put forth a greater effort to protect their interest.

The testimony taken in this case discloses that the Baltimore Trust Company, administrator *c. t. a.* as aforesaid, made very little effort to determine what the estate of the decedent located in the State of Virginia consisted of, although it appeared that he was engaged in the holly wreath business there in connection with which he owned certain property, and further appeared that at the time of his death in the State of Virginia he had in his possession certain valuable jewelry. The fact that the exceptants, constituting

all of the heirs at law of the said Charles Edward Brown, signed a petition or paper writing setting forth that neither they nor the Baltimore Trust Company, administrator as aforesaid, were in a position to administer the estate of the decedent in the State of Virginia and asking that Mr. Charles E. Hughes, of the State of Virginia, be selected as ancillary administrator in that State, and the further fact that Mr. Charles E. Hughes in pursuance of said petition or paper writing was appointed ancillary administrator of the estate of the decedent in the State of Virginia, relieves Baltimore Trust Company, administrator *c. t. a.* as aforesaid, to a great extent. But in view of the fact that the heirs of the decedent were often unable to agree among themselves as to the best course to take in the settlement of the estate, which was well known to Baltimore Trust Company, administrator as aforesaid, it was necessary for Baltimore Trust Company, administrator as aforesaid, to exercise a close supervision over the settlement of said estate. (*Record pp.* 211, 212, and 213.)

It was brought out by the testimony that on October 5, 1942, Charles E. Hughes was appointed ancillary administrator of the estate of Charles Edward Brown, deceased, by the Clerk of the Circuit Court of New Kent County, Virginia, and gave bond in the sum of $15,000 with National Security Corporation as surety; and that subsequently as such ancillary administrator the said Charles E. Hughes filed an appraisement in the office of the Clerk of the Circuit Court of New Kent County, Virginia, of both the real estate and personal property of the said Charles Edward Brown located in the State of Virginia, showing real estate of the value of $2500 and personal property of the value of $9132.79. (Administrator's Exhibits 4 and 5). There is no evidence that this appraisement did not include all the real estate of the decedent and all the personal property located in the State of Virginia. Nor is there any evidence that the said Charles E. Hughes, ancillary administrator as aforesaid is not properly administering

the estate of the said decedent in the State of Virginia or that the interest of the heirs of the said decedent in the property located there is not being sufficiently protected. Further it has not been shown that the estate of the said Charles Edward Brown, has suffered any loss by reason of the management of that portion of the estate located in the State of Virginia.

As stated above Baltimore Trust Company as domiciliary administrator *c. t. a.* of the estate of the decedent is not required to take ancillary administration in the State of Virginia or any other foreign jurisdiction, and it cannot be held responsible for the acts of the ancillary administrator in the State of Virginia, until it appears that the estate of the decedent has sustained some loss in that jurisdiction and that Baltimore Trust Company, domiciliary administrator *c. t. a.* as aforesaid, is responsible for such loss by reason of its neglect to properly perform its duty as such administrator. If it should appear upon further investigation that said ancillary administrator appointed by the Clerk of the Circuit Court of New Kent County, Virginia, failed to have all the property of the decedent located in the commonwealth of Virginia appraised, or failed in any other respect to properly discharge his duty as such ancillary administrator I have no doubt that redress could be had therefor by bringing the matter to the attention of the Circuit Court of New Kent County, Virginia. Certainly that would be the proper course to take.

What I have said in reference to the property of the decedent located in the commonwealth of Virginia applies also to the jewelry and personal effects of the decedent which he was supposed to have had upon his person at the time of his death. It is admitted that the decedent died in the State of Virginia, consequently whatever jewelry or personal effects of any nature which he had upon his person were located in the State of Virginia at the time of his death. There is no testimony before me that any of this property ever came into the possession of Baltimore Trust

Company as domiciliary administrator *c. t. a.* In fact, the evidence before me is that Mr. Charles E. Hughes, of Providence Forge, Virginia, took possession of the jewelry and other personal effects found upon the decedent at the time of his death upon the claim that said jewelry and other personal effects had been given to him by Charles Edward Brown, the decedent, before his death. This same Charles E. Hughes according to the testimony before me, has since been appointed by the Clerk of the Circuit Court of New Kent County, Virginia, ancillary administrator of the estate of the decedent located in the State of Virginia. It, therefore, seems to me that the proper place to determine the question of whether the jewelry and other personal effects which it is claimed the decedent had upon his person at the time of his death actually belonged to the decedent, is before the Circuit Court of New Kent County, Virginia. Any one who saw him while in Virginia or who attended him in any way during his illness would be available as witnesses and might be able to throw some light upon the question.

For the reasons stated herein I am of the opinion that the general exceptions to the first and final account of Baltimore Trust Company, administrator *c. t. a.*, should be dismissed.

In paragraph 15 of the petition the exceptants took exception to certain items found on the credit side of the first and final account of Baltimore Trust Company as administrator *c. t. a.* Under sub-paragraphs A, B and C exception was made because said account did not include the property of the decedent located in the State of Virginia, moneys due and owing unto the decedent as a result of the operation of a certain holly business in the State of Virginia and certain jewelry which it was claimed the decedent had upon his person at the time of his death. These items were all dealt with in discussing the general exceptions taken to the account and it is not necessary to discuss them further except to say that they are disallowed.

Sub-section D of paragraph 15 aforesaid, takes exception to the account because it does not contain certain sums of money due and owing to the decedent from the operation of his various enterprises in the State of Delaware, consisting of the basket liners and cap business, sweet potato plant business and the nursery business. In support of this exception it is claimed that the various sums due the decedent from this business within the State of Delaware is shown by the books, records and files maintained by the decedent in connection therewith. The representative of Baltimore Trust Company, administrator *c. t. a.*, as aforesaid, testified that it took possession of all of the books and records of the decedent which it was able to locate and collected all of the accounts found therein which it was possible to collect. Three or four small books were admitted in evidence but the accounts stated therein are not clearly set forth and it is hard to understand what they represent. There is no testimony that the decedent kept other records or accounts in connection with this business in addition to those which were introduced in evidence. If additional records should be found at a later date it would be the duty of the administrator *c. t. a.* as aforesaid, to consider them and collect all accounts found therein which were collectible. The evidence before me is not sufficient to support this exception and it is therefore disallowed.

By sub-section E of said paragraph 15, exception is taken to the account because as stated therein the administrator *c. t. a.* as aforesaid, charged itself with the following item "By compromise on Willis Mortgage, $2000". It appears that the Willis mortgage was originally jointly held by Hattie C. Brown, the wife of the decedent, and her sister, Viola C. Ellwanger, who survived her; that the interest of the said Hattie C. Brown in said mortgage was bequeathed to the decedent by the provisions of her will; that the decedent had expressed his intention during his lifetime to transfer his interest in said mortgage to the said Viola C. Ellwanger, which was known to these exceptants and in

order that his wishes in this respect should be carried out they directed the administrator *c. t. a.* as aforesaid, to transfer to the said Viola C. Ellwanger the interest which the decedent owned in said mortgage. It is averred by the exceptants that no money was ever received by Baltimore Trust Company, administrator *c. t. a.* as aforesaid, on account of said mortgage, and it was only required to transfer the one-half interest which the decedent owned at the time of his death to Viola Ellwanger, the surviving co-owner. But by charging itself with said sum of $2000 the administrator *c. t. a.* as aforesaid, thereby increased the amount of the gross personal estate of the decedent which was the basis upon which commissions were allowed it for its services.

The decedent being entitled to the one-half interest in the said mortgage at the time of his death there is no doubt that the same was part of his estate and that the administrator *c. t. a.* as aforesaid, was responsible therefor together with all the other personal property which he owned at the time of his death. It was required to make the necessary transfer and the responsibility upon it was just as great as it would have been if it had actually handled the money. Every executor or administrator is required to account for all of the estate of its decedent which comes into its hands or over which it exercises control, and it seems clear that Baltimore Trust Company, administrator *c. t. a.* as aforesaid, should account for the amount of this mortgage. Having recognized the same as a part of the estate of the decedent it was necessary to account for it before the Register of Wills. In fact, this was the safest course for the administrator to take for its own protection.

For the reasons above stated this exception cannot be allowed.

The exception set forth in sub-section F of paragraph 15 of the exceptants' petition, charging that the administrator *c. t. a.* as aforesaid, entailed an unnecessary loss

of $77.50 to the estate of the decedent by the sale of a certain wrecked car, was withdrawn at the hearing and need not be considered.

In paragraph 16 of the petition, the exceptants take exception to certain items appearing on the debit side of the first and final account passed by Baltimore Trust Company, administrator *c. t. a.* as aforesaid; which will now be considered.

In sub-section A of this paragraph exception is taken to certain money paid to C. E. Hughes, claimed to have been advanced by him for the benefit of the decedent, amounting to $769.25, and also certain other money paid to C. E. Hughes claimed to have been advanced by him for the benefit of the decedent amounting to $100.72. It being claimed that both of said amounts were not only excessive but that the said C. E. Hughes had no right or authority to advance the sums represented thereby and that Baltimore Trust Company, administrator *c. t. a.* as aforesaid, was not obligated to pay them out of the assets of the estate of the decedent.

It was brought out during the hearing that Mr. Charles E. Hughes of Providence Forge, Virginia, had been associated in business with the decedent for approximately 33 years; that about five or six years prior to the death of the decedent the decedent brought the said Charles E. Hughes to the banking house of Baltimore Trust Company in Bridgeville, Delaware, introduced him to Mr. James Sherman Neil, the trust officer or cashier of said Baltimore Trust Company, and said this is the man that keeps my affairs straight when I am in Delaware and then turned to Mr. Hughes and said this is the man that keeps my affairs straight in Virginia. (Testimony of James Sherman Neil, record page 86). It also appears from the evidence that at the time the decedent was taken sick in Virginia and at the time of his death in Richmond, no one who was related to him was present to care for him and make the necessary

arrangements for his burial. It further appeared that these things were done by his friend of long standing, Mr. Hughes, who accompanied his remains to his home in Bridgeville, Delaware. Certain receipts were introduced in evidence representing bills paid by Mr. Charles E. Hughes and constituting the item of $769.25. (Exceptants' Exhibit No. 2). These receipts covered such items as Retreat for Sick, Richmond, Virginia, $4.10; M. H. Eames, Medical Doctor, Providence Forge, Virginia, professional visit Mr. Charles Edward Brown, deceased, $5.00; Mrs. Clarence K. Gott, professional services, 9-1-42, $5.00; Dr. James McCaw Tompkins, to Senator C. E. Brown $20; to Matapeake Ferry $4.10; Joseph W. Bliley Co., morticians, Richmond, to one casket complete and professional services $500, embalming $25, preparing remains $10, suit of underwear and hose $35, hearse services to Bridgeville $150 and a number of other small bills which appeared to have been paid by the said Charles E. Hughes.

It is readily seen that these were all necessary bills which had to be paid by someone. The best practice would have been to have allowed them to be presented to Baltimore Trust Company, administrator c. t. a. as aforesaid, and paid by it, but having been paid by Mr. Charles E. Hughes whom I understand incurred them, I see no reason why he should not have been reimbursed by said administrator provided it was satisfied that the bills were correct. There was no showing that said bills were excessive and they seemed to compare favorably with bills of this character at that time. Some of these bills having been incurred in the State of Virginia, it would have been proper to have allowed such bills to be presented to the ancillary administrator appointed in that State, but where the estate of the decedent is perfectly solvent, as Mr. Brown's was, it makes no difference whether a bill is paid by the representative appointed in the State of the domicile of the decedent or a representative appointed by a foreign jurisdiction.

Certain other receipts were introduced in evidence representing bills paid by Mr. Charles E. Hughes and constituting the item of $100.72. (Exceptants' Exhibit 3).

These receipts covered such items as $6.48 to George W. Hanks for groceries; Short Service Station, $2.35 for oil, one muffler and cleaning plugs; James P. Scott, for groceries $2.24; American Stores Co. for groceries $.81; Philip Goldsboro $10; Lulu Bradley, colored maid $14.00; Fred Palmer, labor for two weeks $44.80; Esaw Bradley, for feeding mules for five weeks at $2.00 a week, $10.00; Cape Charles-Little Creek Ferry $3.00 and other bills of a similar nature. It appears that after the body of the decedent was brought to Bridgeville it was taken to his home and Mr. Charles E. Hughes who accompanied it there, and his sister, Miss Bessie Brown, stayed at the home until after the funeral. It was necessary for them to live while there and the bills above mentioned for groceries seem to have been created for that purpose. While it may not have been necessary for any one to remain in the house yet that custom is usually followed and I see no reason why the bills created for that purpose should not have been paid. The bills due employees were not as urgent perhaps and it is not clear how or when the bill paid the service station was created. All of these bills should have been presented to the administrator c. t. a. as aforesaid, and paid directly by it. Their correctness has not been questioned however, and they seem to have been created for the benefit of the decedent or his estate. For these reasons I think it was proper for the administrator c. t. a., as aforesaid, to pay the bills and cannot allow this exception.

Under sub-section B of paragraph 16 exception is taken to all of the items appearing in the account which read "to paid Fred Palmer, labor", the various amounts named therein, upon the ground that said items are excessive because they include compensation to Fred Palmer for work and labor done on Saturday afternoons during the time he

was employed by the administrator *c. t. a.* as aforesaid, whereas, in fact, the said Fred Palmer did not work on Saturday afternoons during the time he was employed by said administrator. The testimony before me was to the effect that Fred Palmer had been employed by the decedent for a number of years before his death, was a trusted employee and knew more about his business affairs in Delaware than any one else. The nature of this business was such that it was necessary for the administrator *c. t. a.* as aforesaid, to have the assistance of some one who was familiar with it, and without such assistance the estate would have probably sustained a loss. With the help of Fred Palmer it was able to continue the nursery business for a short time and disposed of peonies and cannas grown by the decedent for $664.66; and also to continue the basket liner and cap business for a short time disposing of stock which the decedent had on hand for the sum of $526.28. (Testimony page 80). Judging from the testimony before me the services of this man were of great value to the estate and these exceptants were the persons who received the benefit of it. Regardless of whether he worked Saturday afternoons or not, considering his knowledge of the decedent's affairs and the services which he performed, the compensation paid him does not seem to me to be excessive. This exception is consequently dismissed.

Sub-section C of paragraph 16 deals with the loss of $77.50 suffered by the estate of decedent by the sale of a certain wrecked car which was withdrawn at the hearing as hereinbefore referred to.

In sub-section D of paragraph 16 exception was taken to the item of $100 allowed to the administrator *c. t. a.*, as aforesaid, as commissions for settling Hattie Brown's estate.

Hattie Brown predeceased her husband, the said decedent, and by her last will and testament left everything which she had to him. Letters of administration were granted upon her estate to the decedent and he passed a first

and final account on August 5, 1942. In this account the assets of her estate were not listed but the accountant simply charged himself with the amount of the inventory and appraisement (Exceptants' Exhibit L). The evidence discloses that the inheritance tax upon the estate of the said Hattie C. Brown was not paid and that certain securities which she owned were never disposed of or transferred to the decedent. (Testimony of James Sherman Neil, pp. 60-61-62). Letters of administration d. b. n. were granted to Baltimore Trust Company upon the estate of the said Hattie C. Brown and it passed a first and final account on June 18, 1943. This account shows that it paid to the State Tax Department the State Inheritance Tax assessed in accordance with the first and final account passed by Charles E. Brown, administrator of Hattie C. Brown, deceased, on August 5, 1942 and certain other necessary bills, but did not include an allowance for its services. On the credit side of the account appears this statement, "The Administrator is not chargeable with any assets of this estate, all of the assets having been taken over by Charles E. Brown, husband of the deceased, during her life time." (See Exhibit.)

This shows that the assets of the estate of Hattie C. Brown were taken in hand by Baltimore Trust Company, administrator c. t. a. as aforesaid, as a part of the assets of the estate of Charles Edward Brown, deceased, and disposed of together with the other assets of the estate of Charles Edward Brown, deceased. Consequently the amount upon which the administrator c. t. a. as aforesaid, received a commission of $10,786.41 for settling the estate of the said Charles Edward Brown, deceased, included the assets of the estate of his wife, Hattie C. Brown, deceased. It cannot be denied that Baltimore Trust Company, administrator d. b. n. of the estate of Hattie C. Brown, deceased, performed certain services as shown by the first and final account passed by it hereinabove referred to, and that no allowance was made to it for its services by said first and final account. This apparently was due to the fact as stated in said ac-

count, that it handled no assets as administrator aforesaid of Hattie C. Brown, deceased, because said assets had been taken over by Charles Edward Brown during his lifetime. The assets of the estate of Hattie C. Brown, amounting to $23,653.48, as shown by the first and final account passed by Charles E. Brown, administrator, increased the estate of Charles Edward Brown, deceased, by that amount and therefore increased the amount upon which the administrator *c. t. u.* as aforesaid, received compensation for its services All of the assets of the estate of Hattie C. Brown, deceased, having gone to Charles Edward Brown under her will, it was necessary for Baltimore Trust Company, administrator *c. t. a.* of the estate of Charles Edward Brown, to perform the service which it did in connection with the settlement of the estate of Hattie C. Brown, deceased, in order to properly perform its service as administrator *c. t. a.* of the estate of the said Charles Edward Brown. Therefore the allowance which it received in the first and final account passed by it upon the estate of Charles Edward Brown, deceased, is sufficient to compensate it for its services and it should not have received the additional allowance of $100 as commissions for settling the estate of Hattie C. Brown, deceased.

For these reasons this exception is allowed and it is directed that the first and final account of Baltimore Trust Company, administrator *c. t. a.* of Charles Edward Brown, be surcharged by the Register of Wills in the sum of $100.00.

Sub-section E of paragraph 16 as aforesaid deals with the assignment of the Willis mortgage for $2000 to Viola C. Ellwanger. This exception was dealt with in passing upon the exceptions to the credit side of said first and final account as set forth in sub-section E of paragraph 15 and need not be considered further here.

In sub-section F of paragraph 16 of the petition filed by the respondents exception is taken to the commission allowed Baltimore Trust Company, administrator *c. t. a.* as

aforesaid, by the Register of Wills for settling the estate of the decedent amounting to the sum of $10,786.41. The claim is made that this amount is excessive because the administrator *c. t. a.* as aforesaid, charged itself on the credit side of said first and final account passed by it with the sum of $2000 represented by the Willis mortgage, and for the reason that said commission represents 5% of the gross amount accounted for as shown on the credit side of said first and final account.

The sum represented by Willis mortgage was the subject of one of the exceptions to the credit side of the account, as set forth in sub-section E of paragraph 15. That exception has already been dealt with in this opinion and it was held that the administrator *c. t. a.* as aforesaid, was entitled to charge itself with the amount represented thereby. For this reason it is unnecessary to give it any further consideration in this connection.

Executors and administrators are entitled to adequate compensation for their services, and unless they receive such compensation it will be difficult to get any one to serve in that capacity, except possibly relatives of the decedent who are willing to serve without being paid for their services. The amount allowed them for their services in connection with the settlement of estates is not only intended to cover all the work performed by them but also the trouble and incidental expenses which may be incurred thereby. Where it is necessary for them to employ persons to care for the property or to perform certain services which they are unable to perform, they are entitled to an allowance for this expense.

Many of the states in this country have statutes regulating the compensation to be allowed executors or administrators and by most of them it is based upon a percentage of the value of the estate which they handle. Where there is no statute fixing the amount to be allowed for such services the practice seems to be for the court by which the let-

ters of administration are granted, or the Register of Wills, to make such an allowance therefor as it considers reasonable and proper under the circumstances of each particular case. *Bendall's Distributees v. Bendall's Adm'r.*, 24 *Ala.* 295, 60 *Am. Dec.* 469; *Mayer v. McCracken*, 245 *Ill.*, 551, 92 *N.E.* 355; *Granberry's Executor v. Granberry*, 1 *Wash.*, (*Va.*) 246, 1 *Am. Dec.* 455; *McKim v. Duncan*, 4 *Gill*, (*Md.*) 72; *McPherson v. Israel*, 5 *Gill & J.*, (*Md.*) 60; *Merrill v. Moore*, 7 *How.*, (*Miss.*) 271, 40 *Am. Dec.* 60; *Pomeroy v. Mills*, 37 *N.J. Eq.* 578; *Clark v. Knox*, 70 *Ala.* 607, 45 *Am. Rep.* 93; *In re Estate of Walker*, 13 *Del. Ch.* 439, 122 *A.* 192.

This state has no statute regulating the amount to be allowed executors or administrators for these services and we are dependent entirely upon the practice which has been followed in that respect. What it is in New Castle and Kent Counties I am unable to say, but it has long been the practice in Sussex County for the Register of Wills to allow them ten percent of the total amount of the estate which they have administered. There have been times when this much has not been allowed, and the amount received by them has been reduced to 5%, but that was in cases where the assets were of such a liquid nature as to require very little work in order to settle the estate. *In re Estate of Walker*, 13 *Del. Ch.* 439, 122 *A.* 192.

In considering the amount to be allowed the administrator *c. t. a.* as aforesaid, there are a great many things which should be kept in mind. In view of the fact that the decedent was engaged in several different lines of business, the nature of the property of which the estate consisted was varied and consequently all of it could not be handled in the same manner. He was engaged in farming to some extent and possessed machinery used in connection therewith, upon which ceiling prices had been fixed by the Government, making it necessary to conduct a certain amount of investigation in order to comply with these Government regulations in selling such property. The growing of canna bulbs and

peony roots was a very unusual undertaking, for this section of the country at least, and careful thought and planning was required in connection with this branch of the business in order to dispose of it at the best advantage. The manufacture of paper caps and liners for baskets and other produce containers, was of an unusual nature and it was not easy to determine what was the best thing to do with that branch of the business and how to dispose of it. A great part of the estate consisted of stocks of foreign corporations many of which the administrator *c. t. a.* as aforesaid, knew nothing about and it required not only considerable investigation to learn what they were worth but the exercise of sound judgment in order to determine the best manner to dispose of them. The entire personal estate as shown by the first and final account amounted to $215,728.33, of which $22,929.12 was cash in bank which was handled without difficulty. This leaves $192,799.21 which the administrator *c. t. a.* as aforesaid, acquired by various means from the other property of the decedent. Some by continuing a certain line of business for a short time, some by public auction and some by sale on the stock exchange because there was no local market for it and that was the only way it could be disposed of advantageously. All of this business was conducted by the decedent himself without the aid of a secretary or bookkeeper, and what books he had in connection therewith were poorly kept and difficult to understand. The persons entitled to his estate were not only unfamiliar with his business affairs but often were unable to agree among themselves as to what should be done. The only person from whom the administrator *c. t. a.* as aforesaid was able to gain any information about the estate, was the colored man, Fred Palmer, who was unable to read and write but who by reason of his long services with the decedent had considerable knowledge of his affairs. It is therefore plainly seen that the greater part of the estate of the decedent consisted of assets which were not easily handled, but required the expenditure of a great deal of time and

work on the part of the administrator *c. t. a.* as aforesaid, as well as careful thought and planning in order to realize the greatest amount therefor.

The amount allowed the administrator *c. t. a.* as aforesaid, for these services is not the maximum amount which under the practice in this county the Register of Wills allows for the settlement of estates, but so far as I have been able to learn from an examination of the records in that office, it seems to be the minimum allowance for such services. After a careful study of the testimony taken in the case, I am of the opinion that the allowance was not excessive and the exception based therein is rejected.

All of the exceptions taken to the first and final account filed by the administrator *c. t. a.* as aforesaid, as set forth in the petition of the exceptants under paragraphs 15 and 16, have been considered and passed upon and strictly speaking there is nothing else to be determined.

However, in the recital of facts in said petition filed by the exceptants mention is made in paragraph 11 of the fact that after that will of the decedent was found and the status of Baltimore Trust Company was changed from that of administrator to administrator *c. t. a.*, it never filed in the office of the Register of Wills, an inventory and appraisement of the goods and chattels, debts and credits, and real estate belonging to the estate of or owned by the decedent at the time of his death.

Paragraph 3 of the petition filed by the exceptants sets forth that Baltimore Trust Company, as administrator of the estate of Charles Edward Brown, deceased, filed in the office of the Register of Wills an inventory and appraisement of the goods and chattels, debts and credits and real estate belonging to the estate of or owned by said decedent at the time of his death, and incorporated said inventory and appraisement, by reference, as a part of said petition. But no contention was made in said petition, or by the exceptions

set forth therein that said inventory and appraisement did not contain all of the personal property of the decedent, except that located in the State of Virginia, or that any items had been omitted therefrom. The apparent contention is that after the will of the decedent was probated and letters of administration *c. t. a.* were granted to Baltimore Trust Company, it should have started the settlement of the estate of the decedent all over again and filed a new appraisement list, just as it did when it was appointed administrator before the will was found. There is no doubt that such a course could have been taken and no objection could have been made to it, but there was nothing to be gained by it and it might have caused some delay in the settlement of the estate.

In fact, the situation in which the administrator *c. t. a.* as aforesaid found itself is fully covered in *Paragraph* 3811 of the *Revised Code of* 1935, by the following language:

"If after administration granted, a will of the deceased, constituting an executor, or disposing of his personal estate, or any part of it, be proved, and letters testamentary, or of administration with the will annexed, be thereupon granted, the prior administrator shall, by such grant, be removed from office. But all the previous lawful acts of such removed executor, or administrator, shall be valid."

Under this provision of the code the appraisement which Baltimore Trust Company had made while acting as administrator of the decedent was valid, and its removal as such administrator by the granting of letters of administration *c. t. a.* after the will of the decedent was probated, did not affect the validity of said appraisement.

If the appraisement list made and filed with the Register of Wills was not made in the manner provided by the statute, or did not contain all of the goods and chattels, debts and credits, jointly owned personal property and real estate belonging to the estate of or owned by the decedent at the time of his death, *Paragraph* 3835, *Revised Code of* 1935, provides a remedy for those who are dissatisfied with the

same. Under this paragraph the Register of Wills has power to order that such inventory or list of debts be suppressed, or to adjudge the same imperfect and to order another to be made and filed in his office. From the decision of the Register of Wills upon any objection made to the inventory either party may appeal to this court. The record before me does not disclose that any objection was ever made before the Register of Wills to the inventory filed in this case, and there seems to be no justification for bringing the matter up in the first instance on an appeal to this court.

What I have said herein in reference to the validity of the inventory and appraisement is applicable only to the inventory and appraisement filed in this state. It is admitted that it does not contain the assets of the estate of the decedent located in the State of Virginia and I have previously noted an exception as to them. Whether the inventory and appraisement filed in New Kent County, Virginia, contains all of the assets of the decedent located in that State, or complies with the law in other respects is a matter to be determined by the court in that jurisdiction.

It is hereby directed that the costs of this proceeding amounting to the sum of Two Hundred Seventy Two Dollars ($272.00) be paid to the clerk of this court by Baltimore Trust Company, administrator *c. t. a.* as aforesaid.