Chriss W. STREET, Petitioner,

v.

The END OF THE ROAD TRUST and American Trailer Industries, Inc., Respondents.

No. 08–50605 (PJW).

United States Bankruptcy Court, D. Delaware.

Sept. 17, 2008.

Neil B. Glassman, Charlene D. Davis, Ashley B. Stitzer, Scott G. Wilcox, Bayard, P.A., Wilmington, DE, Phillip Greer, Law Offices of Phillip Greer, Esq., Newport Beach, CA, for Petitioner, Chriss W. Street.

David L. Finger, Finger & Slanina, LLC, Wilmington, DE, Robert T. Kugler, Robert L. DeMay, Sarah E. Doerr, Jacob B. Sellers, Leonard, Street and Deinard, Professional Association, Minneapolis, MN, for Respondents, The End of the Road Trust and American Trailer Industries, Inc.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to cross motions (Doc. ## 36, 38) for summary judgment filed by petitioner, Chriss W. Street ("Street"), and by respondents, The End of The Road Trust (the "Trust") and American Trailer Industries, Inc. ("ATII") (collectively "Respondents"). With respect to two indemnification provisions, Street seeks a judgment for advancement of fees and expenses, and fees incurred in this proceeding. Respondents seek a judgment dismissing the petition. For the reasons stated below, the Court will deny Street's motion.

## BACKGROUND

On October 7, 1996, the Fruehauf Trailer Corporation and its related entities ("Debtors") petitioned for relief under chapter 11 of title 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* Street was the Chief Operating Officer of Debtors and was responsible for formulating a plan of reorganization. (Res. A5; Res. A421–22.)[1] On July 31, 1998, Debtors filed the Amended Joint Plan of Reorganization (the "Plan") and the Amended Disclosure Statement (the "Disclosure Statement"). (Pet.A1–180.) The Plan proposed to establish a liquidating trust to orderly liquidate Debtors' assets and appointed Street as the Trustee. (Res.A41–45.) The Trust also designates two representatives of creditors to constitute a Trust Advisory Committee (the "TAC"). The TAC exercises approval authority over the Trustee with respect to certain significant Trust activity. (Res. A43 at ¶ 6.7(h).) The Plan also contains a general indemnification statement. (Res. A42 at ¶ 6.7(d).)

The Disclosure Statement lays out the terms of employment for Street as the Trustee and as Chairman of the Board ("COB") and Chief Executive Officer ("CEO") of Fruehauf de Mexico ("FdM"). (Res.A11–13.) As FdM was the only operating asset in the Trust, Street was the COB and CEO of FdM because of his role as the Trustee. The Disclosure Statement also contains a general indemnification statement and sets forth a detailed statement of Street's compensation package. (Res.A13–14.)

Exhibit B to the Plan is the Liquidating Trust Agreement (the "TA"), which details the formation and operation of the Trust. (Res.A19–35.) The TA contains an extensive indemnification provision, an advancement provision, and a compensation statement for the Trustee. The advancement provision reads:

> Expenses (including attorneys' fees) incurred by the Trustee or any employee or agent of the Trustee in defending any action, suit or proceeding *may* be paid by the Liquidating Trust in advance of the final disposition of such action, suit or proceeding, upon an undertaking by the Trustee, or such employee or agent, to repay such amount to the Liquidating Trust, unless it shall ultimately be determined that he is or was entitled to be indemnified with respect thereto.

(Res. A31 at ¶ 8.5.2 (emphasis added).)

The compensation statement reads: "The Trustee shall be entitled to receive from the Trust Estate compensation for his services as Trustee in accordance with terms set forth on Exhibit C to this Liquidating Trust." (Res. A31 at ¶ 8.5.3.) However, while the TA references an Exhibit C, it was not attached to the TA. Nor was Exhibit C attached to the Disclosure Statement or the Plan. Exhibit C was not filed with this Court and therefore not approved by this Court. Presumably Exhibit C was not a part of the Disclosure Statement, the Plan, the TA, or any other material served on the creditors in the solicitation of votes on the Plan. Apparently the missing Exhibit C dealt with the compensation of the Trustee. (Res. A31 at ¶ 8.6.) The governing law for the TA is the State of Delaware. (Res. A578 at ¶ 10.10.)

On September 17, 1998, the Court confirmed the Plan. (Res. A66–68.) At the confirmation hearing, Street testified that the terms of his employment as the Trustee were those set forth in the Disclosure

---

1. Both Street and the Respondents filed substantial appendices with their briefs on this matter. Street's appendix will be cited here as "Pet. A ——" and the Respondents' appendix will be cited here as "Res. A ——".

Statement (Res. A219; A498–500), and the Court so found. (Res. A75 at ¶ 18.)

On October 20, 1998, the Court entered an order amending the confirmed Plan to, among other things, provide for the creation of a Delaware corporation, Frude-Mex, to hold the stock of FdM. (Res. A80 at ¶ 6.) FrudeMex stock was transferred in trust to Street, who named himself sole director and president. (Res. A81 at ¶ 9.) On December 31, 1998, FrudeMex merged into FrudeMex Holdings, LLC. (Res. A582–95.) On September 30, 1999, Frude-Mex Holdings, LLC (Res.A596–597.) merged into FDM, Inc., a newly-created Delaware corporation (see Res. A599–601), later to be known as ATII. (Res.A650.)

Pursuant to the Plan, the TA was executed and Debtors' interests in property were transferred to Street in his capacity as the Trustee. (Res. A42 at ¶ 6.6; A554–55.) The TA sets forth a detailed indemnification provision (Section 8.5.1), an advancement provision (Section 8.5.2), and a compensation statement for the Trustee (Section 8.6). (Res.A547.) October 27, 1998, was the stipulated effective date for the Plan. (Res.A564.) On that day, Street and the Trust purportedly entered into an employment agreement (the "TEA"), retaining Street as the Trustee of the Trust. (Pet.A233–40.) Section 5 of the TEA addresses indemnification and advancement. In relevant part it states:

> 5. *Indemnification* .... Expenses (including attorney's fee) incurred by Street in defending any civil, criminal, administrative or investigative action, suit or proceeding *shall* be paid by the Trust in advance of them final disposition of such action, suit or proceeding upon receipt of an undertaking by Street to repay such amount if it shall ultimately be determined, by a court of competent jurisdiction, that Street is not entitled to be indemnified by the Trust ...

(Pet. A238 (emphasis added).)

Street signed the TEA both as the employee and as the Trustee. (Pet.A240.) On October 27, 1998, Street also purportedly entered into an employment agreement with FrudeMex (the "FEA"), retaining him as its COB and CEO. (Pet.A241–48.) The FEA contains essentially the same indemnification and advancement provision as the TEA. (Pet.A244.) The FEA was signed by Street both as the employee and as the employer. (Pet.A248.)

There is a dispute as to whether the TEA and FEA were finalized and signed on their stated date of execution, October 27, 1998. Respondents produced a letter of the Trust's counsel, Mr. David M. Englander, to the Trust that contained drafts of Street's employment agreements as the Trustee and as an officer of FrudeMex. (Res.A232.) The letter is dated December 2, 1998, approximately a month after the date on the executed TEA. (Res.A236.) Allegedly, Street made some suggestions relative to the draft and Mr. Englander incorporated the requested changes and mailed another draft to the Trust on January 20, 1999. (Res. A232 at ¶ 6.) Additionally, the Trust proffered a collaborating affidavit from Ms. Courtney Watson, the secretary for the Trust, that the TEA was not finalized until after 1998. (Res.A244–46.)

On August 1, 2005, Street resigned as the Trustee. On August 19, 2005, the Court entered an order appointing Daniel W. Harrow as the successor trustee (the "Successor Trustee"), effective August 1, 2005. (Res.A131–33.)

## PROCEDURAL HISTORY

On March 7, 2006, Street sent Respondents a demand for advancement for expenses arising out of an investigation conducted by the Successor Trustee regarding

Street's conduct during his trusteeship. (Pet.A254.) On December 28, 2006, Street again sent Respondents a demand for advancement for expenses arising out of the investigation conducted by the Successor Trustee and a lawsuit against an entity of which Street was a director. (Pet.A257–59.) Both demand letters contain an undertaking by Street to repay any expenses advanced if it were ultimately determined that Street was not entitled to indemnification. Both demands were rejected by the Successor Trustee. (Pet.A255–56.)

On January 9, 2007, Street filed a petition in the Chancery Court of the State of Delaware, asserting claims for advancement and indemnification. (D. Del. No. 07–00065–JJF ("D.Del.") D.I. 1.) On February 2, 2007, the Successor Trustee commenced an adversary proceeding against Street in this Court alleging breaches of fiduciary and contractual duties. (Adv. Pro. No. 07–50398.) On the same day, the Successor Trustee removed the Chancery Court action to the District Court for the District of Delaware. (D.Del.D.I.1.) On February 14, 2007, Street filed a motion to remand, challenging subject-matter jurisdiction. (*Id.*) On April 29, 2008, the District Court denied Street's motion to remand and referred the action to this Court. (D.Del.D.I.36.)

With this Court's permission, Street filed an amended petition and sought advancement of costs, including attorney's fees, in connection with the investigation conducted by, and the adversary proceeding filed by, the Successor Trustee, together with an award of fees on fees. (D.Del. D.I.24–25.) To date, Street claims that he has incurred fees and expenses in excess of $169,049.65 prosecuting the petition and $1.25 million defending the adversary proceeding in this Court. (Doc. # 39, pp. 8–9.)

## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re IT Group, Inc.,* 331 B.R. 597, 600 (Bankr. D.Del.2005).

The moving party bears the burden of showing there are no genuine issues of material fact that would preclude summary judgment. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met this burden, the burden shifts to the non-moving party to show that a genuine issue of material fact does in fact exist. Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *In re IT Group,* 331 B.R. at 600.

## DISCUSSION

### Indemnifications and Advancements

Street's arguments in his opening brief are all focused on Delaware corporation law and indemnification rights for officers and directors of Delaware corporations. Respondents argue that that case law is irrelevant because the TA is a common law trust. Indeed, in a June 27, 2005 e-mail Street states that "[t]he End of the Road Trust (EORT) is a grantor trust established under Delaware Law." (Res.A757.) However, to the extent that Street relies on the FEA, Delaware corporation law would be applicable. To the extent that Street relies on the TA and the TEA, I do not believe Delaware corporation law would necessarily be applicable. In any event, for the reasons discussed below, I do not believe that this difference between

the parties has any impact on the result that I reach.

There are a number of basic propositions in Delaware corporate cases that are helpful in clarifying the distinction between (1) indemnification and advancement, and (2) a mandatory advancement and discretionary advancement, with the former constituting an enhanced benefit to an indemnitee.

In *Homestore, Inc. v. Tafeen,* 888 A.2d 204 (Del.2005), the Delaware Supreme Court noted the distinction as follows:

> Section 6.1 of Homestore's bylaws provides for, among other things, indemnification of present or former officers and directors "to the fullest extent permitted by the" Delaware General Corporation Law. In addition, Section 6.2 of Homestore's bylaws contains a mandatory advancement provision: "the Corporation *shall pay* all expenses (including attorney's fees) incurred by such a director or officer in defending any such Proceeding as they are incurred in advance of its final disposition."

*Id.* at 206–07.

\* \* \*

The advancement authority conferred by section 145(e) is permissive. Nevertheless, mandatory advancement provisions are set forth in a great many corporate charters, bylaws and indemnification agreements. Homestore's bylaws provide corporate officials with a mandatory right of indemnification and an unconditional mandatory right to advancement.

*Id.* at 212 (footnote omitted).

In *Citadel Holding Corp. v. Roven,* 603 A.2d 818 (Del.1992), the Delaware Supreme Court expressed the distinction as follows:

> The General Corporation Law of Delaware expressly allows a corporation to

advance the costs of defending a suit to a director. 8 *Del. C.* § 145(e). The authority conferred is permissive. The corporation "may" pay an officer or director's expenses in advance. The Agreement [here], on the other hand, renders the corporation's duty mandatory in providing that expenses *shall* be paid in advance. Under the Agreement, Citadel is required to advance to Roven the costs of defending suits, rather than merely permitting it to make such advances as provided in the statute. The use of the word "shall" therefore simply reflects the parties' intention to provide Roven expanded protection.

*Id.* at 823 (footnotes omitted)(emphasis added).

■ In *Majkowski v. American Imaging Management Services, LLC,* 913 A.2d 572 (Del.Ch.2006), the Delaware Chancery Court expressed the distinction as follows:

> Given that Delaware clearly recognizes indemnification and advancement as two distinct legal rights, and that absent a specifically worded bylaw providing for mandatory advancement, Delaware law leaves the decision whether to advance litigation expenses to the business judgment of the board ....

*Id.* at 580 (footnote omitted).

\* \* \*

> Because rights to indemnification and advancement differ in important ways, our courts have refused to recognize claims for advancement not granted in specific language clearly suggesting such rights.

*Id.* at 589 (footnote omitted).

The court in *Majkowski v. American Imaging* quoted from two prior Delaware decisions as to how to assess an indemni-

tee's entitlement under a discretionary advancement provision:

> Advanced Mining Systems, [*Inc. v. Fricke,* 623 A.2d 82, 84 (Del.Ch.1992)] ("A by-law mandating the advancement of funds on the receipt of an undertaking to repay deprives the board of an opportunity to evaluate the important credit aspects of a decision with respect to advancing expenses.... [T]he better policy, more consistent with the provisions of Section 145(e), is to require any such by-law expressly to state its intention to mandate the advancement by the corporation of arguably indemnifiable expenses...."); *Havens v. Attar,* 1997 WL 695579, at *1 (Del.Ch.1997) ("[A]bsent a specifically worded by-law providing for mandatory advancement, 8 *Del. C.* § 145(e) leaves to the business judgment of the board the task of determining whether the undertaking proffered in all of the circumstances, is sufficient to protect the corporation's interest in repayment and whether, ultimately, advancement of expenses would on balance be likely to promote the corporation's interests.").

*Id.* at n. 43.

 In the context of the TA, a noncorporate entity, I conclude that either the Successor Trustee or the TAC can exercise the kind of judgment that a board of directors can undertake in a corporate discretionary advancement context.

*Disclosure Statement, Plan, TA, TEA and FEA re Indemnifications and Advancements*

 Decretal paragraph 12 of this Court's order of September 17, 1998 that confirmed the Plan (Case Doc. # 1524) states:

> The Debtors are authorized to engage the services of Chriss Street as Liquidating Trustee on substantially the terms described in Section IV(L) of the Disclosure Statement and, by entry of this Order, his retention is hereby approved.

(Pet.A201.)

Section IV(L) of the Disclosure Statement sets forth on three pages an extensive description of Street's employment rights with the Trust and Fruehauf de Mexico. That section delineates Street's compensation and other employment related provisions in considerable detail. Among other things, that Section states:

> It is anticipated that Mr. Street, on or before the Effective Date of the Plan, will enter into (i) an employment agreement with the Liquidating Trust which will provide for his employment as Trustee, and (ii) an employment agreement with Fruehauf de Mexico, which will provide for his employment as Chairman of the Board and Chief Executive Officer of Fruehauf de Mexico. The terms and conditions of the agreements as currently contemplated are described below.

(Res.A11.)

As to any indemnification rights, Section IV(L) of the Disclosure Statement states that as to both employment agreements "Mr. Street will be indemnified for liabilities incurred by him in the performance of services under the agreements, except for liabilities arising from his intentional misconduct." (Res.A14.) Thus, what was approved by this Court was the simplest of indemnification rights. There is no suggestion whatsoever of an advancement right.

The Plan likewise contains a perfunctory statement regarding indemnification: "The Liquidating Trustee and his employees and agents will be indemnified by the Liquidating Trust against claims arising from the good faith performance of duties under

the Bankruptcy Code or this Plan." (Pet. A138.) There is no suggestion whatsoever of an advancement right.

In summary, the various treatments of indemnification and advancement as found in the Disclosure Statement, the Plan, the TA, the TEA, and the FEA are as follows:

(1) The Disclosure Statement simply says that "Mr. Street will be indemnified for liabilities incurred by him in the performance of services under the [employment] agreements, except for liabilities arising from his intentional misconduct." (Res.A14.)

(2) The Plan simply states that "[t]he Liquidating Trustee and his employees and agents will be indemnified by the Liquidating Trust against claims arising from the good faith performance of duties under the Bankruptcy Code or this Plan." (Pet. A138.)

(3) The TA sets forth in Section 8.5.1 an extensive statement regarding the Trustee's right to indemnification. With respect to advancements, Section 8.5.2 of the TA states:

> Expenses (including attorneys' fees) incurred by the Trustee or any employee or agent of the Trustee in defending any action, suit or proceeding *may* be paid by the Liquidating Trust in advance of the final disposition of such action, suit or proceeding. . . .

(Res. A31 (emphasis added).)

(4) The TEA and the FEA set forth a detailed indemnification provision and an advancement provision that states that "[e]xpenses (including attorney's fees) . . . *shall* be paid by the Trust in advance of the final disposition of such action, suit or proceeding . . . ." (Res. A828 (emphasis added).)

Thus, it is only the TEA and the FEA, entered into sometime after the Plan effective date, that contain a mandatory advancement provision not found, or even suggested, in the Disclosure Statement, the Plan, or the TA. The mandatory advancement provision of the TEA obviously modifies in a material way the discretionary advancement provision of the TA. In the words of the *Citadel Holding Corp. v. Roven:* "The use of the word 'shall' therefore simply reflects the parties' intention to provide Roven *expanded* protection." 603 A.2d at 823 (emphasis added).

I find that the mandatory advancement provisions in the TEA and the FEA are invalid. The indemnification and advancement paragraph in the TEA starts off by saying: "In addition to any right of indemnification which may be available to Street pursuant to the Trust Agreement, the Trust hereby agrees to indemnify Street." (Res.A828.) This statement flies in the face of two provisions of the TA. Section 7.2 of the TA provides:

> The Trustee shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Estate or otherwise take any action hereunder, except as expressly provided herein, and no implied duties or obligations shall be read into this Agreement in favor of or against the Trustee. . . .

(Res.A29.)

More importantly, Section 5.4.3 of the TA provides:

> The Trustee may not modify the terms of this Liquidating Trust Agreement unless the Liquidating Trustee secures the written approval of such modification from Class A Beneficial Interest holders holding over 50% of the Class A Beneficial Interests.

(Res.A25.)

By granting a mandatory advancement right, the TEA obviously modifies in a material way the terms of the TA which granted only a discretionary advancement

right. There is nothing in the record before me to suggest that the enhanced right granted to Street by the indemnification and advancement paragraph of the TEA was approved by the appropriate vote of the Class A Beneficial Interest holders, or any successor beneficiaries, or by the TAC. *See President and Fellows of Harvard Coll. v. Glancy,* No. 18790, 2003 WL 21026784, *14 (Del.Ch. Mar.21, 2003) (holding that a shareholder agreement entered into by certain defendants subsequent to the effective date of a voting trust agreement to which litigants were parties altered the original terms of the voting trust: "The court agrees [with the litigants] that these rights and obligations had the effect of altering the original terms of the Voting Trust, and therefore the Shareholder Agreement must be considered an amendment to the Voting Trust Agreement"); *In re Johns–Manville Corp.,* 920 F.2d 121, 128 (2d Cir.1990) (noting that unless an alteration to the terms of a trust's operation conforms with the modification provisions of the trust and confirmed plan, it will constitute a modification to the plan).

By a December 2, 1998 letter to a Trust employee, Mr. Englander transmitted six employment agreements, including the two for Street, one as Trustee and one as an officer of FrudeMex. In that letter, Mr. Englander stated: "I assume you can distribute the agreements and arrange for signature by each of the appropriate parties. In the case of Chriss' agreement as trustee, I think you should have at least one (and preferably both) of the members of the Trust Advisory Committee sign on behalf of the Trust...." (Res.A236.) Given the specific directive in Section 5.4.3 of the TA, I am not sure that Mr. Englander's advice would have authenticated the TEA. In any event, that advice was not followed as Street signed the TEA both as the employee and the employer.

The advancement provision in the FEA fairs no better than the advancement provision in the TEA. Neither the TA nor the Plan addresses Street's employment by FdM, later FrudeMex. It is only the Disclosure Statement that discusses in detail Street's employment both by the Trust and by FdM, later FrudeMex. As to any indemnification or advancement right, the Disclosure Statement contains the simple statement that under both employment agreements "Mr. Street will be indemnified for liabilities incurred by him in the performance of services under the agreements, except for liabilities arising from his intentional misconduct." (Res.A14.) There is no suggestion whatsoever that Street would have a mandatory advancement right as an employee of FdM, later FrudeMex.

There are two important connections between FrudeMex and the Trust. First, Frudemex was formed for the purpose of holding the stock of FdM. Of course, FdM was property of Debtors' estates and it thus became property of the Trust. (Res. A831.) Second, the Disclosure Statement points out that "[u]nder the agreement with Fruehauf de Mexico, Mr. Street will be employed as Chairman of the Board and Chief Executive Officer and will be entitled to serve in such capacity so long as he is trustee of the Liquidating Trust and the Liquidating Trust owns, directly or indirectly, a majority of the voting stock of Fruehauf de Mexico." (Res.A13.) Thus, Street's employment by FdM was effected solely by reason of his trusteeship under the Trust and would continue only so long as Street had that trusteeship position. In reality, just like the TEA, the FEA was an adjunct to the TA. Since Street had no authority to provide for mandatory advancement in his TEA, it follows that he likewise had no authority to provide for mandatory advancement in his FEA. The

mandatory indemnification provision of the FEA, like the TEA, is in violation of Section 5.4.3 of the TA.

There is no evidence that anyone other than Street and the Trust's attorney had any involvement in drafting or executing the TEA and the FEA. Accordingly, it appears that neither the Trust beneficiaries nor the TAC had any involvement in drafting or authorizing the execution of these two documents. Thus, I conclude that Street, a fiduciary at the time, represented both sides to these two agreements.

The FrudeMex certificate of incorporation contains a broad indemnification provision, but does not contain an advancement provision, discretionary or mandatory. (Res.A831–32.)

Because Street had no authority to include mandatory advancement provisions in the TEA and the FEA, he has no right to obtain advancement pursuant to those two documents. Whatever advancement right he has is governed by the discretionary advancement provision in the TA.

### Legal Fees Payable By A Trust

■ Delaware courts suggest what factors a trust may take into consideration in exercising its discretion to pay attorney's fees. In *Bankers Trust Co. v. Duffy*, 295 A.2d 725 (Del.1972), the Delaware Supreme Court stated the general rule as follows:

> The general law provides two situations in which an allowance from a trust corpus for attorneys' fees may be made: when the attorneys' services were necessary for the proper administration of the trust, Scott on Trusts (2nd Ed.) § 244; Restatement of Trusts 2nd § 188; or where the services otherwise resulted in a benefit to the trust, 7 C.J.S. Attorney and Client § 193. Delaware law is in accord with the general rule.

> The Courts of this State have consistently allowed fiduciaries reimbursement from the fiduciary estate for "necessary" expenses. *In re Seller's Estate*, Del. Ch., 31 Del.Ch. 158, 67 A.2d 860 (1949); *In re Brown's Estate*, Orph.Ct. 28 Del. Ch. 562, 52 A.2d 387 (1944); *In re Walker's Estate*, Orph.Ct., 13 Del.Ch. 439, 122 A. 192 (1923). Delaware Courts have also permitted such an allowance on a theory that the services resulted in a benefit to the trust estate. *Hayward v. Green*, Del.Supr., 32 Del.Ch. 576, 88 A.2d 806, 811 (1952); *Bata v. Hill*, Del. Ch., 37 Del.Ch. 363, 143 A.2d 728 (1958).

*Id.* at 726 (footnote omitted).

■ *In re Trust u/a McKinley*, 2002 WL 31934411 (Del.Ch.2002), the Delaware Chancery Court stated the rule as follows:

> Under Delaware law, the payment of attorney's fees out of trust corpus is generally proper in two circumstances. The first is where the attorney's services are necessary for the proper administration of the trust. The second is where the legal services create a benefit to the trust. Where a trustee brings, or defends against, a claim advanced for the benefit of the trust estate or its administration, the resulting litigation expenses are properly borne by the trust. Where, on the other hand, the trustee improperly involves the trust in litigation or retains an attorney at the trust's expense for the trustee's individual benefit and not for the benefit of the trust estate, the trustee is chargeable with the legal fees and cannot recover those fees from the trust.

*Id.* at *3 (footnotes omitted).

■ In the record before me, in the context of the TA's advancement provision, I have serious doubts as to whether Street could demonstrate either of these two circumstances. I do not rule out the possibility that there may be other circumstances

that would warrant a trust making such payments. However, I believe the record before me is insufficient to render an opinion as to the merits of the Successor Trustee's rejection of Street's advancement demands. For example, while I have no idea of the size or financial condition of the Trust, it occurs to me that this is one fact that may be relevant in deciding the merits of the Trust's discretionary position. By way of another example, as noted above, the *Majkowski* court stated that "[a] by-law mandating the advancement of funds on the receipt of an undertaking to repay deprives the board of an opportunity to evaluate the important credit aspects of the decision with respect to advancing expenses. . . ." *Majkowski*, 913 A.2d at n. 43 (quoting *Advanced Mining Systems*, 623 A.2d at 84). Then the court went on to observe that "absent a specifically worded by-law provision for mandatory advancement, 8 *Del. C.* § 145(e) leaves the business judgment of the board the task of determining whether the undertaking proffered in all of the circumstances is sufficient to protect the corporation's interest in repayment. . . ." *Majkowski v. American Imaging*, 913 A.2d at n. 43 (quoting *Havens v. Attar*, 1997 WL 695579, at *1). That statement clearly suggests that in the context of a discretionary advancement provision, such as that found in the TA, the business judgment may entitle the board of directors to evaluate the indemnitee's financial condition to determine whether or not it is likely that the indemnitee will repay the advancements if the underlying litigation results in a decision adverse to the indemnitee. I believe this proposition would be applicable to the Trust in responding to Street's petition based on the discretionary advancement provision of the TA. However, I do not believe the record in this petition proceeding is sufficient to evaluate any such business judgment by the Trust.

Respondents set forth a number of reasons why in this case the Successor Trustee should not authorize the advancement. However, I do not believe that the record before me is sufficient to weigh those reasons. In Street's pursuit of his advancement right as set forth in the TA, then in a trial on the merits Street and Respondents can present whatever evidence they deem appropriate for the Court to conclude whether the Trust is exercising appropriate business judgment in denying advancement.

### Exhibit C to the TA

In his brief, Street states the following:

> The terms of Street's compensation as trustee of the Trust and an officer and director of ATII were disclosed and approved by the Court. The Disclosure Statement, the Plan, and the Trust Agreement, which was an exhibit to and approved by the Plan, state with specificity the terms of Street's employment as trustee of the Trust and an officer and director of FrudeMex, *which include advancement.* (See A34–35, Disclosure Statement, §§ IV.F.7.b and .d; A43–46 IV.L.1 and 2; A34, Plan, § 6.7(b) and (d); A226, Trust Agreement, § 8.5.2.) Moreover, upon information and belief, Exhibit C to the Trust Agreement was the Trust Employment Agreement. (See Englander Dep., A74–75; A814–821; [B.D.I. 1899, Exhibit A]). Creditors were served with the Disclosure Statement, the Plan, and the Trust Agreement and therefore received notice of the terms of Street's compensation, *including advancement.* The Plan was accepted by overwhelming majorities in each voting class of creditors. See A185, ¶ 9.

(Doc. # 39, p. 22–23 (emphasis added).)

This position is a combination of misleading statements and speculation. The

second sentence of the quote says that all the relevant documents state with specificity the terms of Street's employment, "which include advancements." Only one of the numerous cited references support that statement—namely, Section 8.5.2 of the TA. However, Section 8.5.2 of the TA does not state that the Trust *shall* make advancements. It only states that the Trust *may* make advancements. (*See* Res. A31.) Thus, it is not a mandatory advancement provision. The above quote goes on to say that Mr. Englander in his deposition suggested that Exhibit C was the TEA. That is not so. In his deposition Mr. Englander identified handwriting on the document that says "Exhibit C to Liquidating Trust Agreement" but he did not know when he wrote it or why he wrote it. (Pet.A807–08.) Thus, I believe it is pure speculation to conclude that Exhibit C is the TEA. Indeed, there are numerous reasons to conclude that Exhibit C was not the TEA:

(1) Section 8.6 of the TA refers to that Exhibit C as addressing "compensation." I suspect that this document was a term sheet setting forth the complex compensation package set forth in the Disclosure Statement. It seems highly unlikely that Exhibit C would have addressed the indemnification rights because that is addressed in the TA itself in detail in Sections 8.5.1 and 8.5.2.

(2) Section 8.6 of the TA states that "[t]he Trustee shall be entitled to receive from the Trust Estate compensation for his services as Trustee in accordance with the terms set forth on Exhibit C of this Liquidating Trust." (Res.A31.) If Exhibit C was intended to be the TEA, then Section 8.6 should have simply said "in accordance with the terms of the employment agreement set forth as Exhibit C to this Liquidating Trust."

(3) The Disclosure Statement states on page 37 that "[i]t is anticipated that Mr. Street, on or before the Effective Date of the Plan, will enter into (i) an employment agreement with the Liquidating Trust which will provide for his employment as Trustee, and (ii) an employment agreement with Fruehauf de Mexico, which will provide for his employment as Chairman of the Board and Chief Executive Officer of Fruehauf de Mexico. The terms and conditions of the agreements as currently contemplated are described below." (Res. A11.) This statement is clearly inconsistent with Street's argument that Exhibit C is the TEA.

(4) In his brief, Street argues as follows: Counsel for the Debtors drafted and negotiated the Disclosure Statement and Plan that contemplated "indemnification rights," and a Trust Agreement that authorized the trustee to make advancements to himself or any employee of the Trust. Counsel from the same firm *then* created employment agreements utilizing the authorization of the Trust Agreement and the DGCL to make advancement mandatory.

(Doc. # 39, p. 28 (emphasis added).)

That statement is inconsistent with Street's argument that Exhibit C is the TEA. Furthermore, contrary to Street's assertion, the TA did not authorize counsel to put a mandatory advancement provision in the employment agreements. Nor does the DGCL mandate a mandatory advancement provision. Section 145(e) of the DGCL merely provides that with respect to indemnification the corporation "may" include an advancement provision "upon such terms and conditions, if any, as the corporation deems appropriate." 8 *Del. C.* § 145(e).

(5) At the confirmation hearing, Street testified that the terms of his employment as a trustee were those set forth in the

Disclosure Statement (*see* Res. A219; A498–500), and the Court so found. (*See* Res. A75 at ¶ 18.)

(6) Roughly a month after execution of the TA and implementation of the Plan, counsel for the Trust drafted and forwarded two employment agreements for Street, one as Trustee and one as COB and CEO of FrudeMex. (*See* Res. A232 at ¶ 5.) Street instructed counsel to make changes. (*See id.* at ¶ 6; A467–69.) Counsel did so and, in January 1999, returned the employment agreements to the Trust for execution. (*See* Res. A232 at ¶ 6.)

Even if it was the intent of the Plan proponents to include the TEA as Exhibit C to the TA, the parties agree that, presumably as a result of inadvertence, Exhibit C was not made a part of the Disclosure Statement, the Plan, or the TA when those documents were filed with this Court. There is nothing in the record to suggest that the Plan vote solicitation package that was mailed to the creditors included the TEA. Presumably, the TEA was not approved by the requisite vote of creditors. Of course, since that document was not filed with this Court, it was not authorized by this Court's Plan confirmation order. *See* 11 U.S.C. § 1127 (providing that after confirmation, the court must confirm any modifications to a plan); *In re Johns–Manville Corp.*, 920 F.2d at 128 (noting that unless an alteration to the terms of a trust's operation conforms with the modification provisions of the trust and confirmed plan, it will constitute a modification to the plan).

### Further Comment on Street's Position

■ Street repeatedly asserts that the advancement provision in his two employment agreements are substantially the same as those contained in the Disclosure Statement, the Plan, and the TA. For example, in his opening brief, Street asserts: "The Employment Agreements contain the same or substantially the same terms as those contained in the Disclosure Statement, the Plan and the Trust Agreement." (Doc. # 39, p. 24.) Likewise, in his answering brief, Street asserts: "[T]he advancement provision in the Employment Agreements is substantially similar to the employment terms identified in the Disclosure Statement, Plan and the Trust Agreement." (Doc. # 48, p. 26.) I disagree. As the Delaware cases discussed above show, there is a fundamental difference between a mandatory advancement provision and a discretionary advancement provision, and the former is found only in the TEA and the FEA. When the TEA and FEA, both executed only by Street, set forth mandatory advancement provisions, that constituted a fundamental modification of the TA's discretionary advancement provision. Pursuant to Section 5.4.3 of the TA, Street had no authority to make that modification.

In his answering brief, Street asserts that "[t]he terms of Street's employment were negotiated at arms length between counsel for the Debtors and various parties in interest, including the bond holders. ([Doc. # 49,] B37–B39)." (Doc. # 48, p. 3.) The record citation does not support that broad statement. Street's deposition transcript reflects that Street only had discussions with others about his compensation, including an "upside." Specifically, the transcript reveals the following:

"Q Do you remember?
A I just remember having conversations about the percentages.
Q Ok. Is that all you remember about those negotiations?
A Yes."

(Doc. # 49, B39.)

### TAC's Motion for Amending the Advancement Provision

In August 2005 the TAC filed a motion seeking an order ratifying the resignation

of Street and the appointment of the Successor Trustee and for related relief. As noted above, on August 19, 2005, the Court entered an order confirming the appointment of the Successor Trustee effective August 1, 2005. (Res.A131–33.) As requested by the TAC motion, that order also appended the following language to Section 8.5.1 of the TA:

> Expenses (including attorney's fees) incurred by the Trustee in defending any civil, criminal, administrative or investigative action, suit or proceeding *shall* be paid by the Liquidating Trust....

(Case No. 96–1563, Doc. # 1809, ¶ D.3 (emphasis added).)

In their answering brief in opposition to Street's motion for summary judgment, in responding to Street's argument that this amendment constituted a modification of the Plan (Doc. # 39, pp. 29–30), the Respondents assert that "[t]he TAC followed all of the procedural requirements to properly amend the TA and the Plan." (Doc. # 50, p. 27.) Respondents cite to those provisions in the Plan and TA delineating how to amend the TA. In his reply brief, Street does not counter the Respondents' argument that the TA was amended as per the Plan and TA. *See* Doc. # 56, pp. 14–17.

Appropriately amending the advancement provision to provide that such expenses *shall* be paid by the Trust, rather than may be paid, demonstrates that the TAC appreciated the difference between mandatory and permissive advancement rights. Also, if the approach Street followed to amend the TA by contract was valid, it would have been more logical and efficient for the TAC to have given the Successor Trustee a contract with the same wording as Street used in his employment agreements. Instead, the TAC asserts that it followed all of the necessary procedural requirements to amend the TA, which include securing the written approv-

al from Class A Beneficial Interest holders. (*See* Res. A25.) This further supports my conclusion that Street had no authority to include mandatory advancement provisions in the TEA and the FEA and that whatever advancement right he has is governed by the discretionary advancement provision in the TA as it existed prior to Street's resignation as Trustee.

### Respondents' Additional Arguments

Aside from the fundamental problem regarding the TEA's and the FEA's mandatory advancement provisions as discussed above, Respondents offer a number of other arguments as to why the TEA and the FEA should not be enforced. These include estoppel, the two documents cannot be signed by the same individual representing two different parties, FrudeMex did not exist when FEA was entered into, both agreements fail for lack of consideration, and Street cannot obtain specific performance of contracts he did not himself perform. I need not address these arguments in light of my opinion that the mandatory advancement provisions of the TEA and the FEA are unenforceable.

### CONCLUSION

For the reasons discussed above, Street's motion (Doc. # 38) for summary judgment is denied. Street may go forward with a trial on the merits as to his advancement entitlement under the TA. Given my ruling that the mandatory advancement provisions of the TEA and the FEA are unenforceable, I believe that Respondents' motion for summary judgment is mooted.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the mo-

tion (Doc. # 38) of Chriss W. Street for summary judgment is **denied.**