In the Matter of the Estate of HAROLD P. WALKER, deceased.

## Sussex, June 4, 1923.

Commissions allowed executor or administrator are considered as compensation for his services in settling decedent's estate, and are not only meant to cover his efforts in collecting the assets, but his labor, risk and trouble in connection therewith.

In absence of statute fixing rate of compensation of administrator, custom is for probate court or Register of Wills to grant such allowance as will be just and reasonable under circumstances of particular case.

Where estate of deceased contractor included two unloading plants, fifteen or twenty miles apart, and industrial railway tracks, engines and cars used thereon, and various kinds of machinery and tools used in road construction, scattered along ten miles of road, all of which the administrator was required to collect, care for, and sell, and part of which was for some time used by decedent's surety and the administrator also collected various sums and settled some claims, allowance of ten per cent. of total amount of estate as compensation, pursuant to established practice customarily followed, except in unusual cases, *held* proper.

When expenses are necessary in order to properly protect property or interests of estate, and are incurred by executor or administrator in good faith in transacting business of the estate with reasonable care and diligence, he should be given credit therefor in his account.

Where item in administrator's account for expenses for auto, car fare, telephone, etc., is the subject of an exception, the administrator should be allowed to explain how they were incurred, and for what purpose.

Where settlement of decedent's estate invloved questions arising under contract between decedent and State Highway Department for road construction, and additional questions by reason of his surety's completion of the work, and attorney had numerous conferences with administrator and representatives or attorney for the surety, and was required to write a great many letters, item in administrator's account for seven hundred dollars for professional services *held* not excessive.

The grounds of exception and the facts material to the decision thereof are sufficiently set forth in the opinion of the court.

RICHARDS, J., sitting.

*Charles W. Cullen*, for the exceptant.

*James M. Tunnell*, for the administrator.

RICHARDS, J., delivering the opinion of the Court.

Some time in the year 1920, the State Highway Department and the Sussex County Improvement Commission awarded two contracts to the firm of Walker & Savage for the construction of concrete roads in Sussex County, one of said contracts extending about five miles west from Millsboro and the other extending about five miles east from Laurel. The contractors were required to give bond for the sum of ———, on each contract and the Fidelity & Deposit Company of Maryland was accepted as surety on each bond. Before the completion of the contracts, Harford P. Walker died and shortly thereafter the said two contracts were taken over by the Fidelity & Deposit Company of Maryland, surety on the bonds, as it had obligated to do and the work was completed by it.

Letters of administration on the estate of Harford P. Walker were granted to Frank F. Davis by the Register of Wills of Sussex County on March 21, 1921. The administrator passed his final account on March 21, 1922, showing that the assets of the estate amounted to $20,017.34. In said account an item of $700 was allowed George N. Davis for professional services as attorney for the administrator, an item of $99.82 was allowed the administrator as "expenses for auto, car fare, telephone, etc.," and commissions were allowed the administrator as compensation for his services amounting to $2,001.73, being ten per cent. of the total amount of the estate.

Exceptions to the account were filed in the Orphans' Court on May 24, 1922, by Fidelity & Deposit Company of Maryland, a creditor, but the argument thereon was continued from time to time for various reasons until January, 1923. The items excepted to are the one for $700 allowed George N. Davis for professional services as attorney for the administrator, the one for $99.82 allowed the administrator as "expense for auto, car fare, telephone, etc.," and the one for $2001.73 allowed the administrator as commissions. The reasons given for the exceptions are as follows:

"That your petitioner is informed and believes that the time, trouble and expense bestowed and incurred by the said administrator in the collection of said accounts and in the selling of said property (personal) has been little, and that there has been no litigation respecting the same, so that the time and labor bestowed by said administrator in the settlement of said estate has been small."

Commissions allowed an executor or administrator are considered as compensation for his services in the settlement of the decedent's estate. They are not only meant to cover his efforts in collecting the assets of the estate, but his labor, risk and trouble in connection therewith.

In most jurisdictions the rate of compensation is fixed by statute, being based upon a certain percentage of the value of the estate which comes into the hands of the executor or administrator. But in the absence of such a statute the custom is for the probate court or Register of Wills to grant such an allowance as will be just and reasonable under the circumstances of the particular case in question. *Bendall's Distributees v. Bendall's Admr.*, 24 *Ala.* 295, 60 *Am. Dec.* 469; *Mayer v. McCracken*, 245 *Ill.* 551, 92 *N. E.* 355; *Granberry's Ex'r. v. Granberry*, 1 *Wash.* (*Va.*) 246, 1 *Am. Dec.* 455; *McKin v. Duncan*, 4 *Gill.* (*Md.*) 72; *McPherson v. Israel*, 5 *Gil & J.* (*Md.*) 60; *Merrill v. Moore,* 7 *How.* (*Miss.*) 271, 40 *Am. Dec.* 60; *Pomeroy v. Mills*, 37 *N. J. Eq.* 578; *Clark v. Knox,* 70 *Ala.* 607, 45 *Am. Rep.* 93.

There is no statute in this state fixing the amount to be allowed executors or administrators for their services but the established practice or custom in Sussex County, as long as any one who has ever been connected with the office of the Register of Wills can remember, has been to allow them ten per cent. of the total amount of the estate which has come into their hands. This practice has been varied from occasionally, however, but they were cases where the estate consisted almost entirely of cash in bank stocks and bonds, or such liquid assets as were very easy for the executor or administrator to get control of and to dispose of according to law.

The estate of Robert F. Godfrey, upon which a first and final account was passed January 26, 1918, was one of that nature. The account is recorded in the office of the Register of Wills at Georgetown, in and for Sussex County, in Administration Account Book V, No. 21, page 241; showing a total estate amounting to $13,526.39, consisting of cash in bank $8,251.67, bank stock $1,012. 50, three notes for $1,000 each, stock in two other companies,—— and small notes, and further showing that the Register of Wills had allowed the executors $1,352.64, which was ten per cent. of the

total amount of the estate. Exceptions to the account were filed in the Orphans' Court and an order made by the court reducing the allowance to the executors to $676.32, which was five per cent. of the total amount of the estate. (See supplemental final account passed January 1, 1919, and recorded in the office of the Register of Wills at Georgetown, in and for Sussex County, in Administration Account Book V, No. 21, page 384.)

In the case before me the total estate amounted to $20,017.34, consisting of $11.11 in cash, an unloading plant at Millsboro, an unloading plant at Laurel, between fifteen and twenty miles apart, industrial railway tracks, engines and cars used upon the same, a paver, two rollers, forms and various other kinds of machinery and tools used in road construction, stretched out along ten miles of road, extending five miles westward from Millsboro and five miles eastward from Laurel. The administrator was required to collect all of this material, machinery and tools, get it in condition for sale, conduct the sale and account for the proceeds before the Register of Wills. He was not able to sell the property until November 30, 1921, by reason of the fact that the contract provided that in case of the failure of the contractors to complete the contract, and it had to be completed by their bondsman, it should be allowed to use the machinery and equipment for that purpose. Consequently the administrator had the responsibility of caring for the property during that time. It is true a portion of it was being used by the bondsman, but it was still the property of the estate of Harford P. Walker. Therefore his administrator was responsible for it. In addition the administrator collected from the State Highway Department the sum of $745.99, being the balance due for work on one of the contracts; he also collected $1,000 due to the deceased from Charles Eckbolt; he settled a claim of R. W. Lambden of $2,300 for $490; with the assistance of the representatives of the Surety Company, he settled for $2,000 a claim of Wilcox Bros. against property which afterwards sold for $2,500, and through the efforts of Mr. Bird, the Wilmington agent of the Surety Company he collected from Comerford Construction Company the sum of $623.03.

While it appears to be true that the representatives of the surety company gave the administrator material assistance in

making a number of these collections, also in getting together the machinery and tools along the roadway, yet he was the only one who had authority to act and the entire responsibility was upon him. It should be kept in mind in this connection that the Surety Company was on the bond given by Walker & Savage at the time the contracts were awarded to them, that it had to take over the work when it became apparent that the firm would not be able to complete it and that it was to its interest to assist the administrator in every way that it possibly could, in order that the Walker estate would amount to as much as possible.

The difference between this estate and the estate of Robert F. Godfrey above referred to can plainly be seen. In view of the character of the property and the work which the administrator was necessarily required to do in order to preserve it for the estate, I feel that the amount allowed him for his services was not excessive.

The next question to be considered is, should an executor or administrator be allowed for expenses incurred by him in the settlement of the estate, in addition to the allowance made to him as compensation?

When such expenses are necessary in order to properly protect the property or the interests of the estate, and are incurred in good faith, in transacting the business of the estate with reasonable care and diligence he should be given credit for them in the account. In re *Ross' Estate*, 179 *Cal.* 358, 182 *Pac.* 303.

The statement in the account as to what these expenses consisted of, namely, "expenses for auto, carfare, telephone, etc.," does not satisfactorily show what the expenses were. It would add very much to the account to set out specifically each small item of expense incurred by the administrator. Where such an item is the subject of an exception, however, the administrator should be allowed to explain how the expenses were incurred and for what purpose. In the present case the administrator testified at the hearing on the exceptions that the item was made up by the amount paid out by him, for labor in collecting the machinery and tools along the roadway, putting it in condition for sale, repairs to the automobiles which were found at various points along the roadway in order to make them run, and gasoline and oil for

them, for help at the sale which lasted two days and other expenses in connection therewith, for telephone calls in connection with the settlement of the estate and carfare to Wilmington to confer with the representatives of the surety company.

I can readily see how such expenses would be necessary in the settlement of an estate of this kind. I sustain the allowance made by the Register of Wills.

The next question to be decided is, was the item of $700 allowed the attorney for the administrator for professional services excessive?

Fixing attorney's fees is always a difficult problem for the court, because it is impossible for any one but the attorney himself to estimate what his services in connection with a certain transaction are worth, and I can easily understand how in many cases it would be impossible for the attorney to explain to the satisfaction of some one else why he considered his services worth a certain amount.

In the settlement of an estate many questions can arise which seem to be of little importance, but which require considerable work by an attorney in adjusting them properly. In the case of *Chicago & Northwestern Ry. Co. v. Nye-Schneider-Fowler Co.*, 260 *U. S.* 35, 43 *Sup. Ct.* 55, Chief Justice Taft said:

"The fee must be reasonable in that it is to be based on a consideration of the value of the attorney's service to the claimant and the amount of time and labor expended by him, bearing a fair proportion to the amount of the judgment recovered. These are the usual and proper elements in fixing compensation for a lawyer's service."

In the case of *Richardson v. Tyson*, 110 *Wis.* 572, 86 *N. W.* 250, 84 *Am. St. Rep.* 937, the court said:

"The time actually spent and work actually done are important elements, but the controlling feature is the work reasonably required. There must also be considered, of course, the character of the work, the manner in which it was done, and the beneficial results to the trust."

The case before the court was not the ordinary case which one finds in the settlement of an estate, but there was the question of the contract entered into with the State Highway Department for road construction to be considered and the additional question

raised thereunder by reason of the fact that it became necessary for the surety company to take over the contract and complete the work. The attorney for the administrator testified that he had numerous conferences with the administrator, numerous conferences with the representatives of the surety company, or its attorney, and was required to write a great many letters in connection with the business.

Under all of the circumstances of this estate I am of the opinion that the fee allowed the attorney was not an unreasonable one and that he should be allowed to retain the full amount.