In the Matter of the **ESTATE of Miriam Worrell WEBB, Deceased.**

Court of Chancery of Delaware, New Castle.

Sept. 1, 1970.

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, for exceptants.

Robert E. Daley, Wilmington, for the Register of Wills.

DUFFY, Chancellor:

This is the first ruling on exceptions to a determination by the Register of Wills since this Court was given appellate jurisdiction effective July 1, 1970. 57 L.D. Ch. 402. Two questions are to be decided: (a) Does the Register of Wills have standing in this Court to defend his decision? and (b) Does the Register of Wills have power to determine the amount of commissions which are deductible?

A.

Bank of Delaware and Donald W. Webb, executors of the estate of Miriam Worrell Webb, administered a will which provides that the corporate executor "shall receive compensation as if it were acting as sole Executor at the usual rates allowed for such services" and, in addition, the individual executor "shall receive for his services as an Executor one-half of the amount" allowed the corporate executor. The Register disallowed as a "deductible expense" or cost of administration the commission payable to Mr. Webb ($6,273.13) because the total commissions would then exceed the rate permitted by his published fee schedule.[1]

1. I emphasize that we are not concerned with whether Mr. Webb may be paid the $6,273.13 by the estate. The Register indeed recommended that it be regarded as a legacy and paid. And the Executors do not make claim for "extraordinary" allowance. The sole issue is the deductibility of Mr. Webb's commission.

### B.

First, as to standing it is established Delaware law that the Register of Wills constitutes a court for certain purposes and an accounting officer for others. In re Estate of Whiteside, Del.Sup., 258 A.2d 279 (1969). When the Register exercises judicial or quasi-judicial functions, not being a party to the proceeding and not having a legal interest in maintaining his decision, he can neither appeal from a judgment or order of a court reversing the proceedings before him nor may he be heard on appeal. 4 C.J.S. Appeal & Error § 205; 4 Am.Jur.2d Appeal & Error Sec. 234. When the Register exercises an administrative function, he has, of course, no direct concern with the outcome of the litigation but he does represent the public interest in the protection and enforcement of the laws which he administers. In that case he has standing to defend his decisions on appeal. Compare Zoning Board of Adjustment of New Castle County v. Dragon Run Terrace, Inc., Del.Sup., 216 A.2d 146 (1965).

Though the Register has traditionally exercised both judicial and administrative (accounting) functions, it is often difficult to decide which of these hats he is wearing in a given determination. But it seems to me that when he is interpreting a statute or exercising discretion given him by statute, that function is at least "quasi-judicial" for appeal purposes and he is without standing to argue in support of his ruling. And that is this case. Here, the Register claims the right to exercise a discretion in applying the law with respect to commissions "allowed" executors (and, as indicated hereafter, I think he has that power). Indeed, his letter "opinion" announced a "holding" in this case. And as an affirmative defense here, he states that he "acted in a judicial capacity" in acting on the account.

In exercising discretion as to what amount should be allowed as a "deductible commission" the Register acted in at least a quasi-judicial capacity and he therefore has no standing on appeal from his ruling. An order will be entered striking him as a party.

Since the State and/or New Castle County have interests affected by the Register's allowances, the Court will entertain an application by the State and/or County to intervene. Meanwhile so that the case may go forward, Robert E. Daley, Esquire, who has appeared as counsel for the Register, will be appointed an amicus and the briefs which he has filed are to be regarded as having been filed by him in that capacity.

### C.

I turn now to the question of the Register's power to regulate commissions. When performing his judicial functions the Register constitutes a court of limited jurisdiction and has no judicial authority except that which is conferred upon him by the Constitution or statute. In re Estate of Whiteside, supra. The Supreme Court held there that the Register improperly exercised judicial powers when he disapproved an amount for attorney's fees which the executors included in their account. Much of the rationale of that very recent decision would appear to be applicable here, particularly the Court's cautionary language in saying that it is a "perhaps doubtful" proposition that the Register has the power to set commissions.

But neither that case nor any other, so far as I know, has in any way referred to 30 Del.C. Sec. 1323(a) which reads as follows:

(a) In determining the value of the net estate for distribution the deductions allowable from the fair market value of the estate on the date of decedent's death shall be as follows:

(1) Funeral and burial expenses.

(2) Debts of decedent owing at the date of death.

(3) Mortgages unpaid on date of death.

(4) Commission of executors and administrators allowed by Register of Wills.

(5) Costs of administration including attorney's fees but not including losses on sales of assets.

The only argument the Exceptants make as to this statute is *ipse dixit*; it is not a grant of power to the Register. But it seems to me that it is, for several reasons.

■ First, four of the five deductions "allowable" from fair market value are specifics which fit the audit function of the Register when he examines an account: Was there a debt, was it paid? In re Estate of Morrow, Del.Orph., 219 A.2d 137 (1966). But as to commissions, the statute specifically says that these are deductible as "allowed by Register of Wills". Why is this language included? Under familiar rules of statutory construction, the Court cannot regard it as surplusage or as legislative redundancy in the double use of "allowed". We have to ascribe a purpose to the use of the language, if reasonably possible. And the ordinary meaning of "allow" is synonymous with "permit", "approve", "grant", "sanction".

Second, the statute that is now 30 Del.C. Sec. 1323(a) was passed in 1937, after the Orphans' Court had expressly stated as a general proposition that

"in the absence of * * * statute the custom is for the probate court or register of wills to grant such an allowance as will be just and reasonable under the circumstances * * *." In re Walker's Estate, 13 Del.Ch. 439, 122 A. 192, 193 (1923)

The Court then went on to apply that principle to the case at hand:

"There is no statute in this state fixing the amount to be allowed executors or administrators for their services but the established practice or custom in Sussex county, as long as anyone who has ever been connected with the office of the register of wills can remember, has been to allow them ten per cent. of the total amount of the estate which has come into their hands." *Id.*

Viewing the statute as a grant of power is certainly consistent with Delaware practice and the cases. See also In re Brown's Estate, 28 Del. 562, 52 A.2d 387 (1944).

■ Third, I know of no other office, officer or procedure by which commissions to be paid to personal representatives are regulated. Commissions are routinely involved in many if not most estate settlements. The amounts which are specifically payable and "deductible" have important consequences for public as well as private purposes. While the "exceptions" procedure under Article 4, Sec. 32 of the Constitution, Del.C.Ann., might adequately protect the latter interest, the ascertainment of proper commissions for inheritance tax purposes should not depend on the action of persons interested in the estate who may, in the natural order of things, have an interest adverse to the public. The statute gives the Register power to make a proper "allowance".

The statute appears in that section of the Code which deals with the inheritance tax. It might be argued that a section specifying an allowable deduction is not an appropriate place in which or from which to imply power to the Register of Wills. But no authority has been offered to show that legislative intent should here be determined by the page or section in which the law is found, or that an otherwise reasonable construction is made unreasonable by the

position of the law in the Code. In any event, it seems to me that the statute shows that the Register has a responsibility to meet in the inheritance tax formulation —viz, ascertaining a proper "allowance" for commissions.

I am well aware of the need for revision of and change in the probate system, as the Supreme Court emphasized in *White-* *side*. And it may be undesirable to add to the Register's powers in the present state of things. But, in my view, the statutory law now gives and for some thirty-three years, at least, has given the Register of Wills power to determine the amount of deductible commissions paid to executors and administrators.

The exceptions are overruled.