COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400

Final Report:  July 9, 2019
Draft Report:  June 24, 2019
Date Submitted:  March 26, 2019

Denise D. Nordheimer, Esquire
Shana A. Pinter, Esquire
The Law Office of Denise D. Nordheimer, Esquire, LLC
2001 Baynard Boulevard
Wilmington, DE 19802

David J. Ferry, Jr., Esquire
James Gaspero, Jr., Esquire
Ferry Joseph, P.A.
824 North Market Street, Suite 1000
Wilmington, DE 19899

      Re:   *IMO the Estate of Margaret Elaine Clark*
            Register of Wills Folio No. 163725

Dear Counsel:

Pending before me are exceptions to estate accountings.  To borrow from then-Vice Chancellor Noble, "[c]ases like this one rarely lead to a doctrinally comfortable and precise outcome."[1]  The exceptant seeks disallowance of a number of entries on the accountings, reimbursement for funds she expended on behalf of the estate, a surcharge against the personal representative, shifting of attorneys' fees,

---

[1] *Stone v. Stant*, 2010 WL 4926580, at *1 (Del. Ch. Nov. 30, 2010).

and a release of all claims. The personal representative, conversely, seeks approval of the amended first accounting "as is" and authority to file a final accounting, pay all listed expenses, make any remaining distributions, and close the estate.

In this post-trial report, my recommendations are akin to a mixed bag, with no clear "winner" or "loser." I conclude that the personal representative has not met his burden to prove all listed expenses, fees, and commissions should be charged to the estate and, as such, I recommend that certain expenses be disallowed in full and in part. I further conclude that the exceptant has not met her burden to prove that the personal representative should be surcharged or should bear the exceptant's attorneys' fees and expenses. Although perhaps not the most "doctrinally comfortable" or "precise outcome", this report seeks to recommend the most equitable distribution of this relatively small estate to its two dueling beneficiaries. This is my post-trial final report.[2]

## I. BACKGROUND[3]

Margaret Elaine Clark ("Decedent") died on February 16, 2016 at Arden Courts Alzheimer's Assisted Living.[4] She is survived by her two children Linda

---

[2] This report makes the same substantive findings and recommendations as my June 24, 2019 draft report, to which no exceptions were filed.

[3] The facts in this report reflect my findings based on the record developed at trial held on March 26, 2019. I grant the evidence the weight and credibility I find it deserves. Citations to the trial transcript are in the form "Tr. #." Trial exhibits are cited as "JX #."

[4] Docket Entry ("D.I.") 2.

Kay Warming and Steve A. Batchelor.  Following her death, Decedent's son (the "Personal Representative"), initiated probate proceedings *in testate* in the New Castle County Register of Wills.[5]  Letters were issued to the Personal Representative on April 19, 2016, and he filed an inventory of the estate on September 1, 2016 and a first and proposed final accounting on July 19, 2017 (the "First Accounting").[6]

On or about October 10, 2017, Decedent's daughter (the "Exceptant"), filed exceptions to the First Accounting *pro se*.[7]  The Exceptant took issue with (1) the listed funeral expenses, (2) the attorneys' fees and commission, (3) the veracity of the affidavits submitted with the First Accounting, and (4) the Personal Representative's alleged lack of integrity in the administration of the estate.[8]  The Personal Representative responded to the exceptions on October 30, 2017, denying any wrongdoing and attesting the First Accounting was accurate and reasonable and the Personal Representative performed his duties appropriately.[9]

---

[5] The record reflects that the Personal Representative had a copy of Decedent's will, but not the original, and he decided to probate *in testate* because the distribution would be the same *in testate* as under the copy of the will. Tr. 146:16-147:7 (Ferry).
[6] D.I. 7; JX 1; JX 2.
[7] JX 6.
[8] *Id.*
[9] JX 16.

Following an unsuccessful mediation of the exceptions on June 20, 2018, trial was scheduled and discovery continued.[10] On December 5, 2018, the Personal Representative filed an amended first accounting (the "Amended Accounting").[11] The Amended Accounting reflected changes to the administrative expenses, funeral expenses, and attorneys' fees and expenses.[12] At the bottom line, the Amended Accounting reflected $0.00 remaining to be distributed to the estate beneficiaries compared to $1,741.46 remaining in the First Accounting.[13] The Exceptant (now represented by counsel) filed exceptions to the Amended Accounting on March 6, 2019, renewing her prior exceptions and objecting to the altered portions of the Amended Accounting.[14] The Personal Representative responded on March 14, 2019 and a one-day trial was held on March 26, 2019.[15]

## II.    ANALYSIS

I am tasked with providing recommendations on the exceptions to the First Accounting and Amended Accounting, the Exceptant's request for fee shifting, and

---

[10] *See* D.I. 32, 34, and 46. I ruled on two discovery motions prior to trial (the Exceptant's motion to compel, D.I. 48, and the Personal Representative's motion to quash, D.I. 54) and, under Court of Chancery Rule 144(f), I stayed the time for taking exceptions to those rulings until my draft report on the merits of this matter. My draft report was issued on June 24, 2019 and no exceptions have been filed.

[11] JX 7 at LW00084-86.

[12] *Compare* JX 2 *with* JX 7 at LW00084-86.

[13] *Id.*

[14] JX 8.

[15] JX 17; D.I. 78.

the Personal Representative's request to close the estate. I recommend that the challenged items be allowed in part and disallowed in part, attorneys' fees and expenses not be shifted, and the Personal Representative be permitted to file a final accounting, subject to the recommendations herein, and work to close out the estate.

## A. The Exceptions Should Be Allowed In Part And Disallowed In Part.

With any estate accounting filed, heirs and beneficiaries are provided an opportunity to object to all or part of the accounting through exceptions. "[T]he Delaware Constitution provides that when exceptions are heard by the Court, 'the account shall be adjusted and settled according to the right of the matter and the law of the land.'"[16] Under Court of Chancery Rule 198, "the personal representative bears the initial burden of demonstrating that the account was properly prepared."[17] "That burden shifts, however, where the exceptant seeks a surcharge. In those instances, the exceptant 'must demonstrate affirmatively that a surcharge is warranted.'"[18] Because the Amended Accounting replaced the First Accounting, the Amended Accounting is my primary focus; although, the First Accounting is part of the record and informs my analysis.

---

[16] *In re Rich*, 2013 WL 5966273, at *1 (Del. Ch. Oct. 29, 2013) (quoting Del. Const., Art. IV, § 32, ¶ 2, cls. 3 & 4).
[17] *Id.*
[18] *In re Marvel*, 2018 WL 4762379, at *2 (Del. Ch. Oct. 1, 2018) (quoting *In re Stepnowski*, 2000 WL 713769, at *1 n.1 (Del. Ch. May 2, 2000)).

   **i.**  **The Requested Commission Is Unreasonable Under The Circumstances.**

The Exceptant challenges the Personal Representative's requested commission of $5,000.00. Because the Exceptant is not seeking a surcharge against the Personal Representative for the commission, the burden falls on the Personal Representative to prove the commission is reasonable.[19]

Commissions represent "compensation to the personal representative for his own services in collecting the assets, checking into and paying bills, and performing the various duties which may be necessary, and his trouble and [i]ncidental expenses incurred thereby."[20] Court of Chancery Rule 192 provides in pertinent part:

> In determining what constitutes reasonable commissions and fees, consideration may be given to the time spent, the risk and responsibility involved, the novelty and difficulty of the questions presented, the skill and experience of the personal representative … , comparable rates for similar services in the locality, the character and value of the estate assets, … the time constraints imposed upon the personal representative and the attorney, the loss of other business necessitated by acceptance of the administration, and the benefits obtained for the estate by the administration. Commissions and fees shall not be considered unreasonable merely because they are based exclusively on hourly rates, exclusively on the value of the probate estate, or exclusively on the value of the assets includible in the estate for the purpose of any tax.[21]

---

[19] *In re Rich*, 2013 WL 5966273, at *1.
[20] *In re Whiteside*, 258 A.2d 279, 282 (Del. 1969).
[21] Ct. Ch. R. 192(b).

Although arising in the surcharge context, the decisions in *In re Marvel*[22] and *Stone v. Stant*,[23] applying Rule 192, are informative. In reviewing the factors in Rule 192 in light of *Marvel*, *Stone*, the Personal Representative's testimony, and the exceptions, I find that the Personal Representative has not met his burden of proving that a $5,000.00 commission is reasonable under the circumstances.

The requested $5,000.00 commission, a "flat rate" chosen by the Personal Representative,[24] represents roughly 13.4% of the total estate. Yet, based upon his own testimony, the Personal Representative did not spend substantial time on estate administration.[25] Most, if not all, of the Personal Representative's duties were

---

[22] 2018 WL 4762379. In *Marvel*, a personal representative's $3,200.00 commission (0.32% of the estate) was upheld as reasonable because the personal representative compiled bills and receipts, took unpaid time off work, resolved legal matters related to the decedent's real estate, and undertook other efforts to administer the estate supporting the $3,200.00 commission. *Id.* at *7-8.

[23] 2010 WL 2734144 (Del. Ch. July 2, 2010), *on reargument,* 2010 WL 4926580 (Del. Ch. Nov. 30, 2010). In *Stone*, the executor's $50,000.00 commission (nearly 3% of the estate) was found unreasonable because the estate was uncomplicated, the executor relied heavily on professionals, and the executor was "unable not only to identify any extensive work required to discharge her duties but also to describe with any particularity the risk that she accepted in administering her mother's estate." *Id.* at *16-17 (internal citations omitted). The Court in *Stone* found that a fee of $10,000 (about 0.6% of the total estate) was "fair and reasonable under the circumstances." *Id.* at *17.

[24] Tr. 116:13-15 (Batchelor). The Personal Representative also testified that he spent 70 hours administering the estate and 140 additional hours in related travel. Tr. 115:17-22 (Batchelor). But, I give this testimony little weight as it conflicts with the specific duties the Personal Representative said he performed (Tr. 175:1-24) and because the Personal Representative did not produce in discovery, nor offer as evidence at trial, his referenced time records. *See* Tr. 115:23-116:6 (Batchelor).

[25] *See* Tr. 175:1-24 (Batchelor)

performed by or with the assistance of his attorneys, who also billed the estate for their time and expense.[26] There was no substantial risk or responsibility involved with the Personal Representative's service, nor anything "novel" or "difficult" about the estate or its administration.[27] There is also no evidence of loss of business by the Personal Representative nor, conversely, cognizable benefits to the estate from his service or specialized knowledge or skills. Finally, looking to the character and value of the estate assets, the estate was not large and was comprised primarily of cash assets. Under these circumstances, I find that a commission of $5,000.00, roughly 13.4% of the total estate, is unreasonable.[28]

Like the exceptants in *Stone*, the Exceptant is "less than helpful when it comes to determining what an appropriate fee would have been" for the Personal Representative's service to the estate.[29] The Exceptant argues that the Personal Representative is not entitled to any commission because the Personal

---

[26] *See id.*; Tr. 126:5-17 (Ferry). In describing his role, the Personal Representative denied that he was uninvolved but rather he described his role as "[w]orking with counsel to ensure that the administration [was] proper." Tr. 191:8-20. *See also* JX 7 at LW00086 (listing attorneys' fees of $24,180.50).

[27] *Cf.* Tr. 118:21-119:4 (Batchelor); Tr. 146:3-148:4 (Ferry).

[28] I decline to incorporate in this analysis an in-depth discussion of the alleged "difficulty" caused by this litigation because the $5,000.00 commission was requested as a "flat rate" prior to any litigation being commenced. But, even if I were to consider this litigation, I find that the Personal Representative has not met his burden of proving that the $5,000.00 commission is reasonable under the circumstances.

[29] 2010 WL 2734144, at *17.

Representative's attorneys "did the work."[30]  But, per Rule 192, "[c]ommissions of personal representatives, *and* fees of the attorneys who represent them, *shall* be allowed in a reasonable amount."[31]

Because the Personal Representative did take steps to administer the estate by, for example, working with his counsel to finalize and file an inventory and accounting, I find that eliminating any commission is not reasonable.  Based upon my review of the factors in Rule 192, the Personal Representative's and his estate counsel's testimony regarding the administration of the estate, and the determinations in *Marvel* and *Stone*, I find that a commission of $1,000.00 would have been reasonable and fair under the circumstances.[32]  Thus, the Personal Representative's commission should be disallowed by $4,000.00.

### ii. The Personal Representative's Travel Expenses Should Be Allowed In Part And Disallowed In Part.

The Exceptant challenges the addition of travel expenses incurred by the Personal Representative to the administrative expenses listed on the Amended Accounting.  This Court utilizes a three-factor test to analyze "the appropriateness

---

[30] Tr. 35:7-11 (Warming).

[31] Ct. Ch. R. 192(a) (emphasis added).

[32] Like in *Stone*, "[t]here is no good way to calculate" an appropriate commission. 2010 WL 2734144, at *17.  After balancing all the applicable considerations, I recommend $1,000.00 (approximately 2.6% of the estate and 20% of the requested $5,000.00 commission) as the largest commission I would have found reasonable and fair under the circumstances.

of [accounting] deductions: relevance, reasonableness, and timeliness."[33] The three factors are "intertwined yet unique" and one factor alone, if strong enough, can be determinative.[34] The scope of these factors was aptly explained in *In re Rich*, as follows:

> Relevance goes to the heart of estate administration: Does the deduction serve the best interests of the estate? Does the deduction protect and preserve the estate? Is the deduction appropriate, given the general standards of estate administration?
>
> Reasonableness speaks to the amount spent: Is the amount spent the fair market value of such goods or services? Is the amount spent proportionate to a benefit that the estate receives or a detriment that the estate avoids?
>
> Timeliness is always an admired but elusive factor: Does the deduction occur in a timely manner so as to achieve a benefit (or avoid a detriment) for the estate?[35]

Regarding timeliness, this Court has recognized "there can be absolute deadlines for deductions."[36] The Personal Representative bears the burden of proving the relevance, reasonableness, and timeliness of his listed expenses.

The Amended Accounting lists travel expenses, within the administrative expenses, totaling $3,541.67.[37] The travel expenses were incurred when the

---

[33] *In re Rich*, 2013 WL 5966273, at *4.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] JX 7 at LW00085.

Personal Representative traveled to Delaware to meet with his counsel on three (3) occasions: November 23, 2016, July 14, 2017, and June 20, 2018.[38] The 2016 and 2017 expenses were incurred prior to the First Accounting, the proposed "final" accounting, but they were not included therein as administrative expenses. The Personal Representative provides no justification for his failure to list the 2016 and 2017 expenses in the First Accounting nor for his decision to add them, belatedly, to the Amended Accounting.

I find the addition of the 2016 and 2017 travel expenses in the Amended Accounting untimely under these circumstances.[39] Conversely, the 2018 travel expenses were relevant to the estate administration,[40] reasonable,[41] and timely incurred.[42] As such, the Personal Representative's travel expenses should be allowed in the reduced amount of $1,462.04.[43]

---

[38] JX 12 at LW00101-2.

[39] *Cf.* Tr. 156:15-22 (Ferry); Tr. 183:18-184:2 (Batchelor).

[40] Tr. 179:23-180:2 (Batchelor).

[41] *See* Tr. 178:18-20 (Batchelor) (explaining that the full airfare was charged to the estate because he would not have traveled to the United States but for the mediation).

[42] *See In re Walker*, 122 A. 192, 194 (Del. Orph. 1923) (holding that if travel expenses "are necessary in order to properly protect the property or the interests of the estate, and are incurred in good faith, in transacting the business of the estate with reasonable care and diligence [the personal representative] should be given credit for them in the account").

[43] *See* JX 5 at LW00035-37, 40 (showing 2018 airfare ($1,217.94), hotel charges ($186.79), and car rental ($57.31)).

### iii. The Personal Representative's Attorneys' Fees Should Be Allowed In Part And Disallowed In Part.

The Exceptant challenges the relevance and reasonableness of the attorneys' fees billed to the estate by Ferry Joseph, P.A., counsel to the Personal Representative. "[F]ees paid to the attorney for the personal representative are considered an expense of the estate."[44] "The rational[e] behind this rule is that the personal representative and his or her attorney is providing a service to the estate and its beneficiaries by properly and efficiently administering the estate."[45] But, the Personal Representative still bears the burden of proving the attorneys' fees and expenses were relevant, reasonable, and timely.

I address each of the Exceptant's four subject-matter challenges—(a) investigation of possible claims arising from Decedent's death; (b) proceeding(s) in North Carolina; (c) this litigation; and (d) banking—in turn.

### (a) Attorneys' Fees And Expenses Incurred To Investigate Decedent's Death Should Be Allowed In Part And Disallowed In Part.

The Personal Representative, through his counsel, investigated potential wrongful death and survival claims arising from Decedent's death.[46] Attorneys' fees

---

[44] *In re Pusey*, 1997 WL 311503, at *3 (Del. Ch. May 23, 1997).

[45] *Id.*; *see also Davis v. Rawlins*, 2 Harr. 125, 125-126 (Del. 1836).

[46] *See* Tr. 130:16-24 (Ferry) (explaining that the Personal Representative was concerned about Decedent's "care and treatment at the nursing facility" and "the cause of death"); Tr. 131:10-16 (Ferry) (testifying that counsel "believe[d] that it was all related to the services

and expenses for investigating a wrongful death action, which is pursued for the benefit of the decedent's heirs and not the estate, are not properly charged to a decedent's estate.[47] But, attorneys' fees and expenses for investigating whether a decedent had any pre-death survival claims (e.g., personal injury claims) that may, if successful, inure to the benefit of the estate, may be properly charged to the estate.[48] Because both wrongful death and survival actions were being investigated jointly, I find that the Personal Representative has not met his burden of proving this category of attorneys' fees and expenses was, in full, properly charged to the estate. I recommend these fees and expenses be disallowed by 50% in recognition of the two seemingly co-equal objectives.[49]

### (b) Attorneys' Fees And Expenses Related To Proceeding(s) In North Carolina Should Be Disallowed In Full.

Second, the Exceptant objects to attorneys' fees and expenses incurred in connection with proceeding(s) in North Carolina. The Personal Representative

---

requested to administer the estate. If for example, there had been some malpractice, some mistreatment, some neglect of some sort, there could potentially be a claim that would be pursued by the estate, a survival action, or perhaps by one or both of the children, a wrongful death action"); Tr. 61:24-62:18, 64:15-22 (Batchelor) (testifying similarly).

[47] *See* 10 *Del. C.* § 3724(a); *In re Ciliberto*, 1993 WL 488239, at *2 (Del. Ch. Nov. 18, 1993).

[48] *Id. See also* 10 *Del. C.* § 3701.

[49] A percentage is recommended because, upon review of the fee affidavit (JX 21), it is clear that identification and removal of charges related solely to wrongful death would be laborious, if not impossible. *See Taglialatela v. Galvin*, 2015 WL 757880, at *4 n.46 (Del. Ch. Feb. 23, 2015).

explained that Decedent had property in North Carolina at the time of her death but that it was not a part of the Delaware estate, nor within Delaware's jurisdiction.[50] His attorney testified likewise.[51] And, they are correct—proceedings related to the North Carolina property were (and, to the extent they are still active, are) separate from the Delaware estate administration. Yet, the estate was billed for fees and expenses related to the North Carolina property and proceeding(s).[52] Those fees and expenses should be disallowed in full.[53]

### (c) Litigation-Related Attorneys' Fees And Expenses Should Be Allowed In Part And Disallowed In Part.

Third, the Exceptant objects to the estate covering the attorneys' fees and expenses incurred in connection with the exceptions and this litigation. As I explained, "[t]he general rule is that fees paid to the attorney for the personal representative are considered an expense of the estate[,]"[54] but this general rule does not apply to attorneys' fees and expenses incurred that do not provide a service or benefit to the estate and its beneficiaries.[55]

---

[50] *See* Tr. 106:5-107:11 (Batchelor).
[51] *See* Tr. 163:11-164:1 (Ferry).
[52] *See, e.g.*, JX 21 at Ex. A (reflecting charges for communications with North Carolina counsel and a potential purchaser of the North Carolina property).
[53] *See Taglialatela v. Galvin*, 2015 WL 757880, at * 8 (disallowing legal fees associated with lawsuits not initiated to benefit the trust or defend the trustee's administration).
[54] *In re Pusey*, 1997 WL 311503, at *3.
[55] *See In re Reichert*, 2001 WL 1398579, at *2-3 (Del. Ch. Oct. 31, 2001).

The Personal Representative and his attorneys acted appropriately in administering the estate, including throughout discovery and mediation.[56] But, the Personal Representative crossed the line from administering and servicing the estate, for the benefit of the estate and its beneficiaries, by belatedly adding his 2016 and 2017 travel expenses to the Amended Accounting. The Personal Representative's decision to add the 2016 and 2017 travel expenses to the Amended Accounting was untimely and benefitted only himself, to the detriment of the Exceptant.[57] As such, it would be inequitable to force the estate and, in turn, the Exceptant to pay for the Personal Representative's untimely additions to the Amended Accounting and the successful exceptions thereto.[58] Thus, I recommend that all attorneys' fees and expenses incurred in drafting, finalizing, and filing the Amended Accounting be

---

[56] The parties disagree about who is to blame for these protracted proceedings and the failed mediation. *See* Tr. 21:6-9 (Warming); Tr. 185:11-22 (Batchelor). Under the circumstances, "[o]ne cannot help but understand why each side has such starkly contrasting views of the other." *Stone v. Stant*, 2010 WL 4926580, at *1. And I find that both parties' views are held in good faith. *See id.* As such, I cannot, and do not, conclude that the Personal Representative acted in bad faith.

[57] *Compare* JX 2 (Personal Representative recovering $5,870.73; Exceptant reimbursed in full and recovering $870.73) *with* JX 7 at LW00084-86 (Personal Representative recovering $8,541.67; Exceptant partially reimbursed, at a loss of $5,299.05, and recovering $0.00). When asked why the Amended Accounting was filed, the Personal Representative was evasive, at best. Tr. 183:18-184:2. *See also* Tr. 185:11-22 (Batchelor).

[58] *See In re Reichert*, 2001 WL 1398579, at *3 (holding that, as a matter of equity, the estate should not cover attorneys' fees and expenses incurred by the executor in connection with his breaches of fiduciary duty). *Cf. In re Pusey*, 1997 WL 311503, at *3 (finding that the attorneys' fees incurred in connection with estate disputes was properly chargeable against the estate because the attorney's "work benefitted both heirs").

disallowed and 25% of all attorneys' fees and expenses incurred after the Amended

Accounting was filed be disallowed.[59]

### (d) Banking-Related Attorneys' Fees And Expenses Should Be Allowed In Full.

Fourth, the Exceptant objects to all attorneys' fees and expenses charged to

the estate in connection with the estate bank account, including setting up the bank

account and doing general banking and bill payment on behalf of the estate. The

Exceptant argues banking falls under the Personal Representative's duties and the

Personal Representative's attorneys should not be compensated from the estate for

"conducting" the Personal Representative's "business."[60] I disagree.

The banking-related fees and expenses were incurred to service the estate.[61]

It would have been more costly for the non-resident Personal Representative to

handle the banking himself and counsel was prudent in covering those duties on his

behalf.[62] Because I recommend, above, that the Personal Representative's

---

[59] I recommend 25% because (1) the fee affidavit does not provide sufficient detail to exclude entries related solely to the untimely travel expenses, (2) the challenge to the untimely travel expenses is one of four subject-matter challenges, and (3) the remaining three (commission, attorneys' fees, and funeral expenses) would have been litigated, to some extent, regardless of the added untimely travel expenses.

[60] Tr. 31:16-22 (Warming).

[61] *See* Tr. 144:6-15 (Ferry); Tr. 95:20-96:1 (Batchelor).

[62] *See* Tr. 43:13-24 (Warming) (conceding that, because the Personal Representative resides in Austria, it is correct that "it would be more costly for him to come back to Delaware in order to personally conduct bank business").

commission be reduced to account for his minimal hands-on involvement in the administration of the estate, the banking-related attorneys' fees and expenses should be allowed, in full, as relevant, reasonable, and timely.

\*      \*      \*

Unless otherwise stated specifically herein, I find that the attorneys' fees and expenses incurred by counsel to the Personal Representative were relevant, reasonable, and timely.  The Personal Representative should submit a revised fee affidavit within thirty (30) days of this decision becoming final, which removes and reduces the fees recommended to be disallowed herein.

### iv.      The Funeral Expenses Should Be Reimbursed To The Fullest Extent Permissible From The Estate's Coffers.

The Exceptant covered Decedent's funeral expenses on behalf of the estate, has not been repaid, and, per the Amended Accounting, will never be repaid in full. The Exceptant asks that the Personal Representative be surcharged for the full funeral expenses, meaning that the Personal Representative would personally fund reimbursement to the Exceptant for such expenses, rather than have them paid by any available funds in the estate's coffers.  The Personal Representative contests the

requested surcharge and asks that the partial reimbursement contemplated in the Amended Accounting be approved.[63]

A surcharge is, essentially, a sanction against a personal representative requiring the personal representative to fund (or refund) the estate because the personal representative improperly or poorly handled the estate, engaged in self-dealing, or improperly depleted estate assets.[64] The sanction of a surcharge is not appropriate, though, when the fiduciary's failings are harmless or justified under the circumstances.[65] Further, surcharges are normally tailored to remedy the specific harm caused, rather than to punish the personal representative.[66] The Exceptant bears the burden of proving a surcharge is warranted.[67]

The only arguably improper conduct I can attribute to the Personal Representative in connection with the estate administration is his untimely addition

---

[63] The Personal Representative intimated that the Exceptant should have filed a claim against the estate for the funeral expenses. Tr. 52:5-23 (Warming); Tr. 143:4-12 (Ferry). She was not required to do so. *See In re Graham*, 275 A.2d 253, 254-55 (Del. Ch. 1971).

[64] *See, e.g.*, *Taglialatela v. Galvin*, 2015 WL 757880, at *8; *In re Lomker*, 1997 WL 907995, at *8 (Del. Ch. Dec. 15, 1997); *Vredenburgh v. Jones*, 349 A.2d 22, 42 (Del. Ch. 1975).

[65] *See In re Lomker*, 1997 WL 907995, at *8 (finding that there was no basis for a surcharge from a harmlessly late inventory, which was delayed, in part, because of the exceptant).

[66] *See, e.g.*, *In re Reichert*, 2001 WL 1398579, at *1 (explaining that the court's previously ordered surcharge was limited to the interest lost by the executor's actions and noting that a further surcharge in the amount of the exceptant's attorneys' fees and expenses was declined), *3 (holding the executor cannot charge the estate for attorneys' fees and expenses incurred in connection with his breach of fiduciary duty but not ordering any additional surcharge).

[67] *In re Marvel*, 2018 WL 4762379, at *2.

of the 2016 and 2017 travel expenses to the Amended Accounting. That conduct does not rise to the level required for imposition of a surcharge, and I find a surcharge for the funeral expenses is not appropriate nor warranted under the circumstances. But, with my findings and recommendations above regarding the amount of the relevant, reasonable, and timely administrative expenses, attorneys' fees, and commission, there will be additional funds available in the estate to reimburse the funeral expenses. Thus, the funeral expenses should be reimbursed by the estate to the fullest extent permissible from the estate's coffers.[68]

**B.    The Exceptant's Attorneys' Fees And Expenses Should Not Be Shifted To The Personal Representative.**

The Exceptant asks that the Personal Representative pay her attorneys' fees and expenses. The so-called American Rule dictates that each party is responsible for its own legal fees.[69] But, this Court does recognize several exceptions allowing fee shifting, including the bad faith conduct of a party to the litigation[70] and where fees are authorized by statute or common law.[71] I interpret the Exceptant's request

---

[68] *See In re Rich*, 2013 WL 5966273, at *5 (explaining that "the General Assembly and this Court have given funeral expenses the rebuttable presumption of being relevant, reasonable, and timely").

[69] *Arbitrium (Cayman Is.) Handels AG v. Johnston,* 705 A.2d 225, 231 (Del. Ch. 1997).

[70] *Id.*

[71] *See, e.g.*, 10 *Del. C.* § 348(e); *In re Pusey*, 1997 WL 311503, at *4 (referencing a body of case law that permits exceptants to have their attorneys' fees and expenses covered by the estate if the exceptions benefited the estate). Regarding the latter, the Exceptant does not seek payment from the estate, nor would such be warranted under the circumstances.

as one for either bad faith fee shifting or a surcharge against the Personal Representative in the amount of the Exceptants attorneys' fees and expenses. Neither is appropriate, here, because I cannot, and do not, find that the Personal Representative acted in bad faith, mishandled the estate, engaged in improper self-dealing, or engaged in any other conduct worthy of a surcharge[72] or bad faith fee shifting.[73]

In so holding, I reject the Exceptant's arguments that the Personal Representative acted in bad faith in (a) submitting false or misleading information in the affidavits filed with the First Accounting, (b) requesting an excessive commission and listing attorneys' fees that were unreasonable and irrelevant, and (c) belatedly including travel expenses in the Amended Accounting "in an effort to bankrupt the Estate in order to prevent [the Exceptant] (1) from being reimbursed the entire amount of funeral expenses paid by her personally and (2) from receiving any distribution from the Estate as a Beneficiary."[74] In short, the Exceptant misreads the affidavits[75] and misinterprets the Personal Representative's reasonable litigation

---

[72] *See supra* n.64-67.

[73] *See Arbitrium (Cayman Is.) Handels AG*, 705 A.2d at 231-32 (explaining that bad faith fee shifting is a "quite narrow exception … applied in only the most egregious instances of fraud or overreaching").

[74] JX 8 at ¶ 4(c).

[75] The plain reading of the Affidavit in Lieu of Receipts supports the Personal Representative—the funeral expenses were paid in full on behalf of the estate when the affidavit was filed and the affidavit does not require, and the Personal Representative did

positions as bad faith conduct.[76] Additional fee shifting is not warranted or appropriate under these circumstances.

### C. The Personal Representative Should Submit A Final Accounting Consistent With This Recommendation.

The Personal Representative seeks permission to finalize and close the estate. Such request should be granted subject to the above recommendations that certain expenses be disallowed and a revised attorneys' fee affidavit be submitted. The Personal Representative should file a proposed final accounting consistent with the above recommendations within sixty (60) days of this decision becoming an order of the Court.

## III. CONCLUSION

For the foregoing reasons, I recommend the Court disallow the following expenses on the Amended Accounting: (a) $4,000.00 of the $5,000.00 commission, (b) $2,079.63 of the $3,541.67 travel expenses, (c) 50% of the investigation-related attorneys' fees and expenses, (d) all of the North Carolina related attorneys' fees and

---

not misrepresent, that he had in his possession documentation as to each and every claim or expense listed on the accounting. *See* JX 3. *See also Dixon v. Joyner*, 2014 WL 3495904, at *4 (Del. Ch. July 14, 2014) ("There is no obligation for [a personal representative] affirmatively to seek out additional documentation beyond that necessary to comply with his duties as administrator."). Likewise, there is no evidence that the Rule 190 Affidavit was fraudulent. *See* JX 4.

[76] I find the Personal Representative had a reasonable basis to believe his commission and attorneys' fees were properly charged to the estate and his actions were not in bad faith or otherwise sanctionable. *See* Tr. 160:11-161:19 (Ferry).

expenses, (e) all of the attorneys' fees and expenses incurred in preparing, finalizing, and filing the Amended Accounting, and (f) 25% of the attorneys' fees and expenses incurred after December 5, 2018.

I further recommend that the remaining exceptions be overruled and that the Personal Representative submit a revised attorneys' fee affidavit and final accounting consistent with this report and recommendation, within thirty (30) days and sixty (60) days, respectively, of this becoming an order of the Court. Finally, I recommend that the Exceptant bear her own attorneys' fees and expenses. This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery